Dayton *v.* Lynes.

---

Nathaniel B. Dayton *vs.* Samuel Lynes, Administrator.

A deputy sheriff committed a default in his office and the party injured brought an action on the case for damages against the sheriff. While this action was pending the sheriff died. Held, that the cause of action survived against his administrator.

The maxim *actio personalis moritur cum persona* does not apply to a case where the tort out of which the cause of action grows is the tort of a third party and not of the party deceased.

In this case though the cause of action arose from the tort of the deputy, the action was yet founded, not properly on a tort, but on the liability imposed by the law upon the sheriff for the default of his deputy.

A deputy sheriff under our statutes is not the mere agent of the sheriff, but is to a certain extent an independent public officer.

Scire Facias against the defendant as administrator of Jacob A. Van Zant, deceased; tried in the superior court before *Carpenter, J.*

Van Zant at the time of his death was sheriff of the county of Fairfield. The plaintiff had brought an action on the case against him, which was then pending, for the default of one George S. Wheeler, a deputy sheriff, in not keeping possession of certain personal property attached by him as such deputy, in a suit of the plaintiff against one Edwards, by means of which neglect the property could not be found to levy the execution upon, on the judgment which the plaintiff obtained in the suit. The present defendant was cited in by the present process, to show reason why judgment should not be rendered against him as administrator of Van Zant. He appeared, and filed the following plea in abatement :—

The defendant prays judgment of the plaintiff's writ and that the same may abate and be dismissed, because he says that the said Van Zant, against whom said original action in said writ mentioned was pending in the superior court for Fairfield county, did, while said action was pending, on &c., die intestate, and that he the defendant was afterwards appointed by the court of probate sole administrator on his estate, and accepted said appointment and gave bond according to law ; that said original action was an action on the case for the default and misconduct of one of the deputies of the said Van Zant, then sheriff, in his official duty, in not retaining property attached by said deputy for sixty days after judgment in the action on which the property was attached, so that the plaintiff might have caused his execution to be levied and satisfied thereon ; and that said original action so brought and pending against the said Van Zant did, by the death of said Van Zant as aforesaid, abate, so that the same could not be revived by said writ of *scire facias* against his administrator, because said action might and could not originally have been prosecuted against the executor or administrator of the said Van Zant had the said Van Zant been dead before the commencement of said action ; and this he, the defendant, is ready to verify. Wherefore he prays judgment that said action and writ of *scire facias* may abate and be dismissed."

The plaintiff demurred to this plea, but the court held it

Dayton *v.* Lynes.

sufficient, and rendered judgment for the defendant to recover his costs. The plaintiff thereupon filed a motion in error and brought the record before this court for revision.

*Belden*, for the plaintiff.

1. The liability of Van Zant for the default of his deputy while living is not denied, and the only question is whether the action survives against his administrator. He is not charged in the declaration with any wrong or tort of his own, but the action is founded on a liability for the acts of his deputy imposed by law, as well as on an implied promise that he would be responsible for the acts of his agent. So far as he is concerned the claim is not founded on a tort or default, but merely on his legal responsibility for the tort or default of another. Whatever the common law may have been on this subject, statutes have been passed both in England and this country to remedy the defects of the common law, and our own enactments seem to place the question arising in this case beyond all doubt. By the *statute of 1804, found in the revision of 1808, sheriffs are made responsible for the defaults and neglects of their deputies, and their estates after death until another sheriff is commissioned. And the same provision is continued in all the subsequent revisions of the statute down to 1849, where the phraseology is a little changed, but not materially ; and so the statute has remained to the present time.* Revision 1808, p. 607. Revision 1821, p. 417. Revision 1849, p. 581. These statutes make the deputy sheriffs *to a certain extent independent of the sheriff, and render him* liable for their defaults, not on the ground that they are his own defaults, but on the ground that he is a guarantor of the faithful discharge of their duties.

2. The form of action in this case is that which has always been adopted in like cases. 1 Chitty Pl., 134. 2 Saund. Pl. & Ev., 790. 1 Swift Dig., 542.

3. In determining whether a personal action survives, the real nature of the injury or claim is to be regarded, and not the form of the remedy. *Booth* v. *Northrop*, 27 Conn., 325.

VOL. XXX.          45

*Carter* and *Seeley*, for the defendant.

1. This action is not only in form *ex delicto*, but is founded on a tort, to wit, the negligence and misfeasance of the deputy sheriff. 1 Chitty Pl., 90 ; and authorities below cited.

2. The action died with the original defendant, Van Zant, unless it survived by virtue of the statute, providing that if the defendant dies during the pendency of an action and before final judgment, the action shall not abate if it might originally have been prosecuted against his executor or administrator. Rev. Stat., tit. 1, § 80.

3. The action could not originally have been prosecuted against Van Zant's executor or administrator. 1 Swift Dig., 448. *McEvers* v. *Pitkin*, 1 Root, 216. 1 Chitty Pl., 67, 90. 1 Saunders' R., 216 *a*, note 1. *Cravath* v. *Plympton*, 13 Mass., 454. *Valentine* v. *Norton*, 30 Maine, 194. *Martin* v. *Bradley*, 1 Caines, 124. *Franklin* v. *Low*, 1 Johns., 396.

4. The only exception to this rule is where the deceased or his estate has made some gain by the tortious act, in which case some form of action will lie against the executor or administrator ; but where no gain is made no action will lie. *U. States* v. *Daniel*, 6 How., 11. *Hambly* v. *Trott*, Cowp., 371. *Powell* v. *Reese*, 7 Ad. & Ell., 426. *People* v. *Gibbs*, 9 Wend., 29.

SANFORD, J. The equities of the plaintiff's case are quite apparent, and we are glad to find that there is no stubborn rule of existing law which requires us to ignore or disregard them.

We think the maxim " *actio personalis moritur cum persona*," which has been pressed upon our attention with so much zeal and ability by the defendant's counsel, is inapplicable to a case like this. It was said by Lord Mansfield, in the leading case of *Hambly* v. *Trott*, Cowp., 371, that the maxim was not generally true, much less universally so, and that the law was then unsettled as to the kind of personal actions to which it should be applied ; but, upon a review of all the cases, he came to the conclusion that where the cause of action is money due, or a contract to be performed, or gain or acquisi-

tion of the testator by the work or labor or property of another, or a promise of the testator express or implied, the action (by which he obviously meant the cause of action) survives ; but that where the cause of action is a tort or arises *ex delicto*, supposed to be by force and against the king's peace, the action dies ; and as to the form of action, that where the defendant if alive could have waged his law, or where the declaration must be *quare vi et armis et contra pacem*, or where the plea must be that the testator was not guilty, no action can lie against the executor, because upon the face of the record the cause of action arises *ex delicto*, and all private criminal injuries or wrongs, as well as public crimes, are buried with the offender. Now it is not to be denied that the criteria propounded by Lord Mansfield have ever since been generally applied ; but tested even by them this suit ought not to abate. The cause of action, though it arose from the default of the deputy sheriff, and therefore arose *ex delicto*, yet could with no propriety be charged or supposed to have been committed with force or against the peace. It is obvious too from the context that the torts or *delicta* referred to by Lord Mansfield were those of the defendant's testator, not of a third person. And besides, the instances put by Lord Mansfield in which the action dies, imply the commission by the deceased of a positively wrongful act. In this action too the declaration is not and ought not to be " *quare vi et armis.*" Upon the face of the record indeed the cause of action arose *ex delicto*, but not *ex delicto* of the deceased sheriff. There was no private criminal injury or wrong or public crime by him committed, to be " buried with him ; " and under no plea could the issue be, as Lord Mansfield said it was in *Hambly* v. *Trott*, to try the guilt of the testator or intestate. Indeed this case seems to fall more appropriately within the class mentioned by Sergeant Williams, in note 1 to 1 Saunders' R., 216 *a*, where he says the rule never extended to such personal actions as were founded upon any obligation, contract, debt, covenant, or *any other duty to be performed*, for there the action survived. Here there was a duty to be performed by the deputy sheriff, to wit, to keep the goods attached, which duty he neglected,

and then the statute made the sheriff responsible, not for his own default, but for the deputy's.

We have found no case in which it has been held that the action or cause of action died, or, as Lord Mansfield expresses it, was buried, with any one but the tort-feasor himself, and to him alone the maxim seems to refer. Suppose a father becomes bound by deed or simple contract for the fidelity, as cashier of a bank, of his minor son, that the son embezzles the money of the bank, and that then the father dies. Can the father's executor escape from liability to answer for that default under the maxim in question ? Whether if the son in that case, or the deputy sheriff in this, had died pending a suit against them, or before its commencement, an action could be maintained against their representatives, we need not decide.

At common law the deputy sheriff in the execution of process was but the agent, servant and bailiff of the sheriff, to whom all processes were directed ; but under our system deputy sheriffs are officers as distinctly recognized by law as the sheriffs themselves. Their appointment is provided for and regulated by law, and they are removable by the county commissioners. And prior to the revision of our statutes in 1849, they could execute none of the duties of their office until their appointment had received the approbation of the county court. Stat., ed. 1835, p. 487. A deputy sheriff duly appointed and approved now executes all the duties of his office entirely independent of the sheriff, and not as his bailiff or servant. Writs may be directed to him alone without naming the sheriff, and by the express provisions of the statute he has the same powers as the sheriff himself. The negligences and defaults of the deputy, therefore, so acting independently of the sheriff, on his own authority derived from the law itself and not from the sheriff, ought not to be considered or treated as the personal torts or defaults of the sheriff; and hence, we suppose, the express provisions of the statute making him responsible for them were enacted by the legislature. The condition of the sheriff is like that of a surety for the fidelity of his deputy, rather than that of a principal tort-feasor

who by word or deed has himself participated in the commission of the wrong. The default is that of the deputy alone, but the statute in aid of the injured party makes the sheriff responsible for that default. And thus the reason given for the maxim, to wit, that all private criminal injuries as well as public crimes are buried with the offender, fails, for the offender who is buried is the deputy and not the sheriff.

By a statute enacted in 1804, and continued in every revision of our statutes down to that made in 1849, it was provided that on the death of any sheriff his deputies should continue in office until his successor should be appointed and assume the exercise of his office, though the term for which such deputy's appointment was made should expire in the mean time. And the statute provides that " the defaults and misfeasances of such jailers and deputy sheriffs, in the mean time as well as before, shall be adjudged a breach of the bond entered into by any sheriff," and that " his estate shall be liable therefor." Stat., ed. 1808, p. 607. In the revision of 1849, p. 581, the words " as well as before " were dropped out of the enactment, leaving the section in all other respects as in the prior revisions. Why those words were then omitted we have not the means of knowing with certainty, but we think it reasonable to suppose it was because the revisors and the legislature thought that the sheriff's liability for the defaults of his deputies committed in his life time, was adequately provided for by the 13th section of the same statute, which enacts that sheriffs " shall be responsible for the neglects and defaults of their deputies in the execution of their office," since it is impossible to discover any good reason for making the sheriff's estate responsible for defaults committed after his death which would not apply with equal or greater force to those committed in his life time. The provision in the act that the sheriff's estate shall be liable for the defaults and misfeasances of his deputies is still retained, and we think the legislature intended to give to the party injured by the deputy's default, not only such indemnity as the sheriff's official bond might afford, but also a cumulative remedy by a direct resort to his estate in the ordinary mode.

Upon the whole we think this is not one of those personal actions which die with the original party, that the plea in abatement ought to have been overruled, and consequently that there is manifest error in the judgment complained of.

The judgment of the superior court is therefore reversed.

In this opinion the other judges concurred.