PORTO RICO RAILWAY LIGHT & POWER Co., Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 589. Argued December 5, 1927.—Decided June 4, 1928.

*J. H. Brown, C. Ruiz Nazario* and *G. E. González* for the petitioner. *M. Benítez Flores* for the plaintiff in the main action.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On July 15, 1922, Rosa Sánchez brought an action for damages in the District Court of San Juan against the Porto Rico Railway, Light & Power Company. The basis of the

action is that by reason of the negligence of the defendant through its agents in driving one of its electric cars in Santurce in August of 1921 the plaintiff was struck by the car and received various injuries which compelled her to be confined for twenty-three days in the Porto Rico Sanatorium and produced a congestion of the lungs from which she was still suffering when the action was brought.

A certain motion for change of venue having been ruled on, the defendant answered on January 9, 1925, or more than two years after the complaint had been filed. It denied the allegations of the complaint and maintained that if the plaintiff was struck by the car, it was due solely and exclusively to her own negligence.

On the 30th of the following March the plaintiff moved that the case be docketed and its trial was set for October 5, 1925. The trial was postponed and set again for April 26, 1927. It was postponed again and set for October 7, 1927.

At this stage the defendant moved on December 26, 1927, for the dismissal of the case on the ground that, according to its information and belief, the plaintiff had died and it was a personal action which was extinguished by her death.

During the pendency of the motion to dismiss Serafina, Juan, Manuel and Josefa Ortiz and Ceferino Sánchez appeared by attorney and, claiming to be the sole and universal heirs of the deceased plaintiff, moved to be allowed to continue the action in accordance with section 69 of the Code of Civil Procedure.

The court took both motions under advisement and disposed of them both by a single order overruling the former and sustaining the latter.

Thereupon the defendant came up to this Supreme Court by means of a petition in certiorari. The writ was issued and the hearing was held with the appearance only of the attorney for the petitioner, the defendant in the action. The other party to the action did not appear and has not presented any brief, although duly notified. Having stated these facts,

let us consider and decide the interesting question involved in this appeal.

Section 69 of the Code of Civil Procedure provides that an action or proceeding does not abate by the death or disability of a party if the cause of action or proceeding survive or continue.

The defendant contends that as this is a statute of American origin, the jurisprudence of the different states of the Union must be applied in its construction, citing the cases of *Harker* v. *Clark,* 57 Cal. 245, and *Chivers* v. *Roger,* 50 La. Ann. 57, the first of which establishes only that "A right of action for wrongful imprisonment ceases with the death of the wrong-doer." We shall refer to the second later in the course of this opinion.

It is true that the heirs of the plaintiff invoked section 69 of the Code of Civil Procedure in asking for the substitution and continuation of the action in their names, but it is true also that their right, if they have any, does not spring directly from that statute. Its root is deeper. It is found in sections 1803 and 1804 and sections 664 to 669 of the Civil Code.

In *Cabrera* v. *Boscio, ante,* page 282, this court said:

" 'Sections 60 and 61 of the Code of Civil Procedure are not the original fountain for awarding damages for death caused by an illegal act, but sections 1803 and 1804 of the Civil Code.' It was so held by this court in *Orta* v. *P. R. Railway Light & Power Co.,* 36 P.R.R. 668, and the principle includes damages caused to a person by the fault or negligence of another."

We agree with the defendant that if the question involved had to be decided by applying the rules of the common law and a great part of the American jurisprudence, we would be obliged to hold that the action in this case was extinguished by the death of the plaintiff.

However, even within the American and English jurisprudence may be observed a marked tendency to abandon the rule of *actio personalis moritur cum persona* which is the

foundation of the old decisions, and in this connection it seems proper to quote from an opinion of the Supreme Court of Tennessee delivered by Judge Green in the case of *Harris v. Nashville Trust Co.*, 162 S. W. 584, as follows:

"The maxim, 'Actio personalis moritur cum persona,' is by no means a favorite with the courts. It has no champion at this date, nor has any judge or law writer risen to defend it for 200 years past.

"Its origin, as said by Bowen, L. J., in Finley v. Chirney, 20 Q.B.D. 494, 508, is 'obscure and postclassical.' It is said by a great commentator to be barbarous, and to rest on adjudication in fact. Pollock on Torts, 53.

"Mr. Jaggard, in his work on Torts, vol. 1, p. 328, says that all the reasons that have been given for the rule are unsatisfactory, if not absurd.

"Mr. Tiffany in the last edition of his Death by Wrongful Act reviews the cases which undertake to give a reason for this maxim, and rejects all of them as insufficient. He concludes with a quotation from the New York court: 'It is of no practical utility to search for the reason of the rule; it remains somewhat obscure. Green v. Hudson River R. Co.' Tiffany on Death by Wrongful Act, section 16 and preceding sections.

"The Supreme Court of Michigan says: 'The rule rests more on artificial distinction than any real principle, and savors more of the logic of the schoolman than of common sense.' Hyatt v. Adams, 16 Michigan 180.

"Quotations might be multiplied from the cases and from text-writers in accord with the foregoing, but it is sufficient to say that no reason has ever been assigned for the existence of this rule which would satisfy an enlightened court of modern times. As pointed out in the case of Finley v. Chirney, 20 Q.B.D. 494, personal actions of almost every character were held to abate upon the death of the parties, in the early times of English Law. 'Survival of causes of action was the rare exception. Nonsurvival was the rule.'

"The English courts, however, many years ago began to make exceptions to the operation of the rule embodied in the maxim here under discussion. The cases were reviewed by Lord Mansfield in Hambly v. Trott, 1 Cowp. 373, 98 Eng. Reprint, 1136, in 1776, and he said, speaking of these cases:

"'I think these conclusions may be drawn from them:

"'First. As to actions which survive against an executor or die with the person on account of the cause of action. Secondly, as to actions which survive against an executor or die with the person on account of the form of action.

"'As to the first, where the cause of action is money due, or a contract to be performed, gain or acquisition of the testator, by the work and labor, or property, of another, or a promise of the testator, express or implied—where these are the causes of action, the action survives against the executor. But where the cause of action is a tort, or arises ex delicto (as is said in Sir T. Raym, 57, Hole v. Blandford), supposed to be by force and against the King's peace, there the action dies; as battery, false imprisonment, trespass, words, nuisance, obstructing lights, diverting a water course, escape against the sheriff, and many other cases of the like kind.

"'Secondly, as to those which survive or die in respect of the form of action. In some actions the defendant could have waged his law, and therefore no action in that form lies against an executor. But now, other actions are substituted in their room upon the very same cause, which do survive and lie against the executor. No action where in form the declaration must be "quare vi et armis, et contra pacem," or where the plea must be, as in this case, that the testator was not guilty, can lie against the executor. Upon the face of the record, the cause of action arises ex delicto; and all private criminal injuries or wrongs, as well as all public crimes, are buried with the offender.'

"The extent of the rule has been limited by cases subsequent to Hambly v. Trott. It would not be profitable to review such decisions here, for aside from the cases, there are now statutes in all jurisdictions where the common law prevails providing for the survival of nearly every form of action.

"In Tennessee it is provided that no action shall abate save those 'for wrongs affecting the character of the plaintiff.' Shannon's Code, 4569.

"The tendency, therefore, has all the while been by decision and by statute to limit and circumscribe the effect of the rule that actions abate by the death of the parties thereto. There is no case to be found within the last two centuries in which the scope of this rule has been extended or broadened.

"As illustrating the disposition of modern courts, we refer to the case of Dayton v. Lynes, 30 Conn. 351, where a deputy sheriff committed a default in his office and the party injured brought an

action on the case for damages against the sheriff. ·The sheriff died while this action was pending, and 'Actio personalis moritur cum persona' was invoked by his executor. The court, however, held that this maxim did not apply to a case where the tort out of which the action grew was the tort of a third party and not the tort of the deceased.''

It is well to remember also that in the study of the jurisprudence certain confusion is introduced by the fact that a great number of the decisions on the matter under consideration refer to cases growing out of actions expressly granted by law to the father or to the mother or to the heirs, as in those of sections 60 and 61 of the Code of Civil Procedure and of the Federal Law on the liability of employers which have their origin in the ancient Lord Campbell Act. In those cases the situation is distinct. There is involved a new action expressly conferred on a designated person and the courts have held that the action is extinguished by the death of that person.

In that sense a majority of the Supreme Court of Louisiana in the case cited by the defendant held that ''The right of action which survives in favor of certain designated persons as beneficiaries, for the recovery of damages for personal injuries to a deceased, perishes with the deceased claimant, notwithstanding suit has been filed and put at issue by an answer.'' *Chivers* v. *Roger,* 50 La. Ann. 57.

Having stated the foregoing, we will refer to the case of *Torres* v. *Heirs of Córdova,* 31 P.R.R. 849. It is not the same as this case, but as in the case of *Orta, supra,* it shows the tendency of this court to look for the original source in order to establish the law, thus acknowledging to the citizen the full benefit of the two juridical systems prevailing in Porto Rico until blending them into one possessing the best and most equitable part of both. In the case of *Torres, supra,* this court, through Mr. Justice Wolf, said:

''Section 123 of the Penal Code for Cuba and Porto Rico provided:

" 'The obligation to restore, compensate for injuries and indemnify for losses passes to the heirs of the person incurring the obligation.

" 'The cause of action for restoration, compensation and indemnification survives in like manner in the heirs of the victim.'

"Neither of the parties has discussed the applicability of this section, but we hold that it has not been directly repealed by the final provisions of the Penal Code as copied and repeals by implication are not favored. Specifically, only so much of the old penal code was repealed as related to crimes and not to the civil liability springing therefrom. In other words, as part of the substantive law in force in Porto Rico, the responsibility of the heirs, at least those accepting the inheritance, is the same as that of the ancestor.

"Now, as a seduction under promise of marriage is penalized in Porto Rico, a civil liability by reason of the cited sections of the codes also goes with it with all the consequences. It would make no difference that similar actions did not survive in the United States.

"'The maxim *actio personalis moritur cum persona* was of very wide application, and by its literal terms would have included even promissory notes. In many jurisdictions the liability, even for torts, has been made more extensive than it was at common law. However, the practices in the various States have no application in Porto Rico where the principle of universal succession, somewhat modified in form, has been accepted. The modification, perhaps, is the benefit of inventory, the right to deliberate and acceptance of the inheritance.

"The appellant has pointed out that the maxim cited is of very limited application in Porto Rico and extends only to rights or obligations like usufruct, *patria potestad* and other matters that necessarily perish with the person.

"'Section 41 of the Code of Civil Procedure is discussed by the parties. It fixes a limitation on the right of action, but otherwise does not aid appellee. It follows:

" 'Sec. 41.—If a person entitled to bring an action die before the expiration of the term limited for the commencement thereof, and the cause of action survive, an action may be commenced by his representatives, after the expiration of that time, and within one year from his death. If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, an action may be commenced against his

representatives after the expiration of that time, and within one year after the issuing of letters testamentary or of administration.'

"In California it would appear that the liability of defendants is limited to actions that survive, but that limitation, perhaps intentionally, is not copied into our code, which is an additional argument in favor of appellant.

"Even if a doubt remained whether any part of the Penal Code of Spain remained in force, nevertheless, with the principle of universal succession prevailing, no action against a defendant would die unless indicated by the code, and, as we have seen, the common law maxim did not prevail in Spain. The tradition here is distinct."

Section 1803 of the Civil Code provides that any person who by an act or omission causes damages to another when there is fault or negligence shall be obliged to repair the damage so done. Section 1804 provides that that obligation is demandable not only for personal acts or omissions, but also for those of the persons for whom they should be responsible.

In accordance with those statutes Rosa Sánchez sued the Porto Rico Railway, Light & Power Co. The defendant answered. The trial was set and postponed several times. If the allegations are true, the obligation of the defendant to indemnify is evident. The defendant had contracted a debt with the plaintiff who sought to collect it through the courts. If judgment had been rendered for the plaintiff and it had been executed, the plaintiff would have received a certain sum of money constituting an asset which she could have enjoyed during her lifetime and, if not exhausted, could have passed to her heirs at her death.

Succession is the transmission of rights and obligations of a deceased person to his heirs, according to sec. 664 a of the Revised Civil Code. The inheritance includes all of the property, rights and obligations of a person which are not extinguished by his death, as prescribed by sec. 667 of the same Code, and is transmitted, according to sec. 665 thereof, from the moment of his death. The deceased continues to live in the person of his heirs, as far as the fiction is possible, or

in the *vacant inheritance* when there are no heirs. As said by Mr. Justice Holmes for the United States Supreme Court in the case of *Blackstone* v. *Miller,* 188 U. S. 189, 204, "Universal succession is the artificial continuance of the person of a deceased by an executor, heir, or the like, so far as succession to rights and obligations is concerned."

There are, of course, certain rights so personal that they can not be transmitted to the heir. The difference between the English common law and our historical and present law may perhaps be defined as that existing between the words *personal* and *very personal.*

Neither have the parties cited, nor have we been able to find, any judgment of the Supreme Court of Spain or of that of Porto Rico directly determining the question involved.

Nor do the commentators express a concrete opinion on the question.

It is truly surprising that a question which should have presented itself many times in reality should not have arisen in the practice of the courts or in the minds of the authors.

In commenting on art. 659 of the old Civil Code, equivalent to sec. 667 of the Revised Code, Manresa says in part:

"The inheritance is the universality or totality of the property, rights and obligations constituting the patrimony thereof. But in order to make its meaning still more precise and prevent confusion in the mind we must say that not all property and rights pertaining to the ancestor at the time of his death can be considered as constituting the inheritance, because some of them, being very personal in their enjoyment, disappear at his death.

"Among these there are to be found the usufruct, use and habitation, any annuity of which the deceased was the recipient, the *patria potestas,* support, guardianship, personal servitudes, and in general all rights of a very personal nature, as all of them are extinguished by the fact of the death and are not transmitted to the heirs or successors, even though during the lifetime of the ancestor they formed part of his patrimony."

Can the right to claim damages for injuries received by a person through the fault or negligence of another after

action has been brought and the issued joined, though not finally decided, be compared to usufruct, use and habitation, any annuity of which the deceased was the recipient, *patria potestas,* support, guardianship, or personal servitude? The question must be answered in the negative.

It should not be overlooked that in this case an action had been brought. The person who had the right thus showed her determined will to assert it, and did assert it, before the courts of justice. She was owed something as susceptible of collection as if it were the product of her personal labor or of damages caused to her property.

This being so, can it be held that the action dies with the claimant? We repeat that it can not, because it is not a case of something so very personal as to require the natural existence of the person in order to continue the action.

The obligation of the defendant accrued at the moment of the occurrence of the accident. It was demandable from that time and was seasonably claimed. A judgment can be rendered in favor of the continuers of the personality of the original claimant as in the case of any other claim. Should any other conclusion be reached, the benefited heir of the plaintiff would not be her decendants, ancestors or collateral relatives, but the very person who injured her. Among the contingencies of the action favorable to the defendant would be the delays, because there would lie therein the possibility of the disappearance of the plaintiff.

By virtue of the foregoing we are of the opinion that the district court acted properly in overruling the motion to dismiss the case and allowing the substitution of the plaintiff by her heirs. The writ must be discharged and the case remanded to the district court *a quo* for further proceedings in accordance with the law.