Porto Rico Railway Light & Power Company, peticionaria, *v.* La Corte de Distrito de San Juan, Hon. Carlos Llauger Díaz, Juez, demandado.

No. 589.—*Visto:* Diciembre 5, 1927. *Resuelto:* Junio 4, 1928.

*J. H. Brown, C. Ruiz Nazario* y *G. E. González,* abogados de la peticionaria; *M. Benítez Flores,* abogado del demandante en el pleito principal.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

En la Corte de Distrito de San Juan se presentó el 15 de julio de 1922 una demanda por Rosa Sánchez contra The Porto Rico Railway Light & Power Company, en reclamación de daños y perjuicios. La reclamación se basa en que la demandante a virtud de la negligencia de la demandada por medio de sus agentes al manejar uno de los carros eléctricos de que es dueña, en agosto de 1921, en Santurce, fué arrollada y recibió varias contusiones que la obligaron a estar recluida en el Porto Rico Sanatorium durante veintitrés días y le ocasionaron una congestión pulmonar de la cual estaba padeciendo aún a la fecha de la interposición de la demanda.

Resuelta cierta moción de traslado presentada, la deman--

dada archivó su contestación el 9 de enero de 1925 o sea más de dos años después de radicada la demanda. Negó los hechos alegados en ésta y sostuvo que si la demandante fué arrollada, se debió única y exclusivamente a su propia negligencia

El 30 de marzo siguiente la demandante pidió la inclusión del pleito en el calendario y la vista del mismo fué señalada para octubre 5, 1925. Se suspendió y volvió a señalarse para el 26 de abril de 1927. Suspendiose de nuevo y se señaló para el 7 de octubre de 1927.

Así las cosas, la demandada el 26 de septiembre de 1927 presentó una moción solicitando el sobreseimiento y archivo del pleito basándose en que según su información y creencia la demandante había fallecido y se trataba de una acción personal que quedó extinguida con su muerte.

Pendiente de resolución la moción de sobreseimiento, Serafina, Juan, Manuel y Josefa Ortiz y Ceferino Sánchez comparecieron por su abogado y alegando ser los únicos y universales herederos de la demandante fallecida, pidieron que se les permitiera continuar la acción de acuerdo con el artículo 69 del Código de Enjuiciamiento Civil.

La corte tomó ambas mociones en consideración y las decidió por una sola resolución negando la primera y concediendo la segunda.

Entonces la demandada se dirigió a esta Corte Suprema por medio de una solicitud de *certiorari*. El auto fué expedido, celebrándose la vista con la sola asistencia del abogado de la peticionaria, demandada en el pleito. La otra parte interesada en el pleito no compareció, ni ha presentado alegato alguno, no obstante habérsele citado debidamente. Expuestos estos hechos, procederemos al estudio y resolución de la interesante cuestión envuelta en el recurso.

El artículo 69 del Código de Enjuiciamiento Civil dispone que una acción o procedimiento no termina por la

muerte o incapacidad de una de las partes, siempre que la causa de uno u otra subsista o continúe.

· Y la parte demandada sostiene que tratándose como se trata de un precepto de origen americano, debe aplicarse para interpretarlo la jurisprudencia de los diferentes estados de la Unión, citando los casos de *Harker* v. *Clark,* 57 Cal. 245, y *Chivers* v. *Roger,* 50 La. Ann. 57, el primero de los cuales se limita a establecer que "el derecho de acción por prisión ilegal cesa con la muerte de la persona que la decretó." Al segundo nos referiremos luego en el curso de esta opinión.

Es cierto que los propios herederos de la demandante invocaron el artículo 69 del Código de Enjuiciamiento Civil para pedir la sustitución y la continuación del litigio a nombre de ellos, pero también lo es que su derecho, si alguno tienen, no emana directamente de dicho precepto legal. Su raíz es más honda. Se encuentra en los artículos 1803 y 1804 y en los 664 al 669 del Código Civil.

En el caso de *Cabrera* v. *Boscio,* 38 D.P.R. 314 dijimos:

" 'Los artículos 60 y 61 del Código de Enjuiciamiento Civil no son la fuente original de la concesión de daños por muerte causada por un acto ilegal sino los arts. 1803 y 1804 del Código Civil,' se resolvió por esta corte en el caso de *Orta* vs. *Porto Rico Railway Light and Power Co.,* 36 D.P.R. 743, y el principio incluye daños a la persona ocasionados por culpa o negligencia de otra."

Convenimos con la parte demandada en que si la cuestión envuelta tuviera que resolverse aplicando las reglas de la Ley Común y gran parte de la jurisprudencia americana, nos veríamos obligados a decidir que la acción en este caso quedó extinguida con la muerte de la demandante.

Sin embargo, aún dentro de la misma jurisprudencia inglesa y americana se observa una marcada tendencia a abandonar el principio *Actio personalis moritur cum persona* que es la base que sustenta las antiguas decisiones, y a este respecto parece oportuno citar lo que sigue que tomamos de la opinión de la Corte Suprema de Tennessee emitida por el

Juez Green en el caso de *Harris v. Nashville Trust Co.,* 162 S. W. 584. Dice:

"La máxima *Actio personalis moritur cum persona* en modo alguno es favorecida por las cortes. Está completamente descartada en el presente y ningún juez ni comentarista la ha defendido en los últimos doscientos años.

"Su origen, según dijo el Juez Bowen en el caso de *Finlay* vs. *Chirney,* L.R. 20 Q.B. Div. 494, 508, es 'oscuro y post-clásico.' Un gran comentarista ha dicho que es una máxima bárbara y que descansa en una adjudicación de hecho. Pollock, Torts, 53.

"El Sr. Jaggard en su obra sobre actos torticeros, vol. 1, p. 328, dice que todas las razones que se han aducido en apoyo de esta regla son poco satisfactorias, si no absurdas.

"El Sr. Tiffany en su última edición de su tratado Muerte Ocasionada por Actos Ilegales, revisa los casos que tratan de dar la razón para la existencia de esta máxima y los rechaza todos por ser insuficientes. Termina haciendo la siguiente cita de una corte de Nueva York: 'No es de utilidad práctica investigar la razón de la regla; permanece en la oscuridad. *Green* vs. *Hudson River R. Co.* 2 Abb. App. Dec. 277.' Tiffany, Death by Wrongful Act, párrafo 16 y precedentes.

"La Corte Suprema de Michigan dijo: La regla descansa más bien en una distinción artificial que en cualquier principio real y participa más bien de la lógica del escolástico que del sentido común. *Hyatt* vs. *Adams.* 16 Mich. 180.

"Podrían multiplicarse las citas de casos y de comentaristas que están de acuerdo con lo anterior pero bastará decir que nunca se ha aducido razón alguna para la existencia de esta regla que satisfaga a un juez erudito de los tiempos modernos.

"Según se indica en el caso de *Finlay* vs. *Chirney,* L.R. 20 Q.B. Div. 494, se resolvió que las acciones personales de cualquier clase que fueren cesaban a la muerte de las partes, en los primeros tiempos del derecho inglés. 'La sobrevivencia de las causas de acción constituía una rara excepción. La no supervivencia era la regla.'

"Sin embargo, las cortes inglesas muchos años ha comenzaron a hacer excepciones a la regla envuelta en la máxima que estamos discutiendo. Los casos fueron revisados por Lord Mansfield en el caso de *Hambly* vs. *Trott* Cowp. Pt. 1, p. 373, en el año 1776, quien dijo, refiriéndose a estos casos: '

" 'Soy de opinión que de ellos pueden hacerse las siguientes conclusiones:

" 'Primera, las acciones que pueden instituirse contra un albacea o que cesan a la muerte de la persona debido a la causa de acción. Segunda, las acciones que pueden entablarse contra un albacea o que cesan a la muerte de la persona debido a la forma de la acción.

" 'Respecto a la primera, cuando la causa de acción se funda en cobro de dinero o en el cumplimiento de un contrato, en la ganancia o adquisición del testador, mediante el trabajo e industria, ó propiedad, de otra persona, o la promesa del testador, expresa o implícita—cuando éstas son las causas de acción, el pleito puede ser instituido contra el albacea. Pero cuando la causa de acción, se funda en un acto torticero, o surge *ex delicto* (según se dijo en T. Raym, 57, *Hole* vs. *Blandford*), y se supone haber ocurrido mediante la violencia y contra la paz del rey, en ese caso la acción cesa; como por ejemplo, agresión, prisión ilegal, daños maliciosos, calumnia e injuria, estorbo público, obstrucción de luces, desviación del cauce de las aguas, huir de las autoridades, y muchos otros casos parecidos.

" 'Segundo, los que subsisten o cesan debido a la forma de la acción. En algunos casos el demandado puede presentarse ante los tribunales para probar que no debe lo que se le pide, ni en todo ni en parte, y por tanto no procede una acción en esa forma contra un albacea. Pero ahora se han substituido otras acciones en su lugar, fundadas en la misma causa, que subsisten y proceden contra un albacea. No procede contra un albacea ninguna acción en que la forma de la declaración deba ser *quare vi et armis, et contra pacem*, o donde la alegación, como en este caso, sea que el testador no es culpable. De la faz de los autos se verá que la causa de acción surge *ex delicto;* y todos los delitos o daños privados, así como todos los delitos públicos, cesan con la muerte de la persona que los comete.'

"El alcance de la regla ha sido limitado por casos posteriores al de *Hambly* vs. *Trott*. No sería útil revisar tales decisiones al presente en vista de que además de los casos ahora existen estatutos en todas las jurisdicciones donde prevalece el derecho común que proveen la supervivencia de casi toda clase de acciones.

"En el Estado de Tennessee se dispone que no cesará ninguna acción que nazca de 'daños que afecten el carácter del demandante.' *Shannon's Code*, 4569.

"Por consiguiente, la tendencia tanto de las decisiones como de los estatutos en todo tiempo ha sido limitar y circunscribir el efecto de la regla que prescribe que las acciones cesen a la muerte de las

personas. No puede hallarse ningún caso resuelto en los últimos dos siglos en el cual el alcance de esta regla haya sido extendido o ampliado.

"Para ilustrar la tendencia de las cortes modernas nos referimos al caso de *Dayton* vs. *Lynes,* 30 Conn. 351, en el cual un sub-marshal faltó a los deberes de su cargo y la parte perjudicada entabló una acción de daños y perjuicios contra el marshal. El marshal murió mientras la acción estaba pendiente y su albacea invocó la máxima de *Actio personalis moritur cum persona.* La corte, sin embargo, resolvió que esta máxima no era aplicable a un caso en que el acto torticero que motivaba la causa de acción era el daño ocasionado por un tercero y no el acto torticero del interfecto."

Es conveniente recordar también que en el estudio de la jurisprudencia introduce cierta confusión el hecho de que gran parte de las decisiones sobre la materia que tratamos se refiere a casos que surgen con motivo de acciones expresamente concedidas por la ley al padre o a la madre o a los herederos, como en los de los artículos 60 y 61 del Código de Enjuiciamiento Civil y de la ley federal sobre responsabilidad de patronos que tienen su origen en la antigua ley de Lord Campbell. En esos casos la situación es distinta. Se trata de una acción nueva conferida expresamente a determinada persona, y muerta ésta se ha decidido por las cortes que la acción queda extinguida.

En ese sentido se manifestó la mayoría de la Corte Suprema de Louisiana al establecer en la decisión citada por la demandada que "el derecho de acción que sobrevive a favor de ciertas personas designadas como beneficiarios, para la obtención de daños por injurias personales al fallecido, perece con el reclamante que fallece, aunque el pleito se haya iniciado y se haya trabado en él la contienda a virtud de la contestación." *Chiviers* v. *Rogers,* 40 La. Ann. 57.

Expuesto lo que antecede, nos referiremos al caso de *Torres* v. *Sucesión Córdova* reportado en el volumen 31, pág. 897 de nuestra Decisiones. No es igual al presente, pero como en el de *Orta, supra,* se revela en él la tendencia de esta corte a buscar la fuente original para establecer el

derecho, reconociendo así al ciudadano el pleno beneficio de los dos sistemas jurídicos que rigen en la isla, hasta llegar a formar uno que integre lo mejor y lo más justo de ambos. Dice esta corte hablando por su Juez Asociado Sr. Wolf en el dicho caso de *Torres, supra*:

"El artículo 123 del Código Penal para Cuba y Puerto Rico prescribía lo siguiente:

" 'La obligación de restituir, reparar el daño e indemnizar los perjuicios se transmite a los herederos del responsable.

" 'La acción para repetir la restitución, reparación e indemnización se transmite igualmente a los herederos del perjudicado.'

"Ninguna de las partes ha discutido la aplicabilidad de este artículo, pero sostenemos que no ha sido derogado expresamente por las disposiciones finales del Código Penal como han sido transcritas, y las derogaciones tácitas no son favorecidas. Específicamente sólo aquella parte del antiguo Código Penal fué derogada que se refería a los delitos y no a la responsabilidad civil proveniente de los mismos. En otras palabras como parte del derecho substantivo vigente en Puerto Rico la responsabilidad de los herederos, por lo menos aquellos que aceptan la herencia, es la misma que la del causante.

"Ahora bien, puesto que la seducción bajo promesa de matrimonio está castigada en Puerto Rico, la responsabilidad civil por virtud de los artículos que han sido citados de los códigos también le acompaña con todas sus consecuencias. No importaría que acciones semejantes no se transmitieran en los Estados Unidos.

"La máxima *Actio personalis moritur cum persona* era de muy vasta aplicación y por sus propios términos hubiera comprendido hasta los pagarés. En muchas jurisdicciones la responsabilidad, aun por daños, se ha hecho más extensiva que como era en la ley común. Sin embargo, las prácticas de los diferentes Estados no tienen aplicación en Puerto Rico donde el principio de la sucesión universal, algo modificado en su forma, ha sido aceptado. La modificación tal vez es el beneficio de inventario, el derecho de deliberar y la aceptación de la herencia.

"La apelante ha sugerido que la máxima citada es de aplicación muy limitada en Puerto Rico y se extiende únicamente a derechos y obligaciones, así como el usufructo, la patria potestad y otros derechos que se extinguen necesariamente con la persona.

"El artículo 41 del Código de Enjuiciamiento Civil se discute

por las partes. Este fija una limitación al ejercicio de la acción, pero por lo demás no favorece a la apelada. Es como sigue:

" 'Art. 41.—Si una persona con derecho a ejercitar una acción muriese antes de terminar el período de prescripción requerido para deducir aquélla, y la causa de la acción subsistiere, los representantes de tal persona podrán ejercitar dicha acción después de la terminación de aquel período y dentro de un año de la defunción. Si una persona contra la cual puede ejercitarse una acción, muriese antes de la terminación del período de tiempo requerido para dar principio a la misma, podrá deducirse dicha acción contra sus representantes, después de la terminación de aquel período, y dentro de un año después del nombramiento judicial del albacea o admistrador testamentario.'

"En California aparecería que la responsabilidad de los demandados se limita a acciones que sobreviven, pero esa limitación, quizá intencionalmente, no se incluye en nuestro código, lo que es otro argumento más en favor de la apelante.

"Aun cuando quedase duda de si alguna parte del Código Penal de España quedó en vigor, sin embargo, prevaleciendo el principio de la sucesión universal, ninguna acción contra un demandado se extinguiría a menos que lo indicara el código, y como hemos visto la máxima de la ley común no prevaleció en España. La tradición aquí es distinta."

Por el artículo 1803 del Código Civil se establece que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Y por el 1804 que tal obligación es exigible no sólo por los actos u opiniones propios, sino por los de aquellas personas de quienes se debe responder.

De acuerdo con esos preceptos legales Rosa Sánchez demandó a la Porto Rico Railway Light & Power Company. La demandada contestó. El juicio fué señalado y suspendido varias veces. Si los hechos alegados son ciertos, la obligación de indemnizar por parte de la demandada es evidente. La demandada tenía una deuda contraída para con la demandante que ésta le pidió por la vía judicial que le. pagara. Si se hubiera dictado sentencia favorable a la demandante y se hubiera ejecutado, la demandante hubiera recibido cierta suma de dinero constitutiva de un bien ma-

terial que hubiera podido disfrutar plenamente en vida y que en caso de no haberse consumido hubiera pasado a sus herederos.

Sucesión es la trasmisión de los derechos y obligaciones del difunto a sus herederos, según el artículo 664 a del Código Civil Revisado. La herencia comprende todos los bienes, derechos y obligaciones que no se extinguen por la muerte, prescribe el artículo 667 del propio Código y se trasmite según el 665 del mismo desde el momento de la muerte. El fallecido continúa viviendo en la persona de sus herederos en cuanto la ficción es posible, o en la *herencia yacente* cuando los herederos no existen. Como dice la Corte Suprema de los Estados Unidos por medio del Juez Sr. Holmes en el caso de *Blackstone* v. *Miller,* 188 U. S. 189, 204, "La sucesión universal es la continuación artificial de la persona de un fallecido por un albacea, heredero, u otro semejante, en tanto en cuanto a la sucesión de derechos y obligaciones concierne."

Claro es que existen ciertos derechos de tal modo personales que no pueden trasmitirse al heredero. La diferencia entre la ley común inglesa y nuestro derecho histórico y actual quizá puede decirse que es la que existe entre las palabras *personal* y *personalísimo.*

Ni las partes han citado ni hemos podido encontrar nosotros ninguna sentencia de la Corte Suprema de España, ni de esta de Puerto Rico, que resuelva directamente la cuestión envuelta.

Tampoco los comentaristas exponen una opinión concreta sobre el particular.

Es algo verdaderamente raro que una cuestión que ha debido presentarse muchas veces en la realidad no haya surgido en la práctica de los tribunales, ni en la mente de los autores.

Comentando Manresa el artículo 659 del antiguo Código Civil, igual al 667 del Revisado, en parte, dice:

"La herencia es la universalidad o el conjunto de bienes, dere-
chos y obligaciones que constituyen el patrimonio del mismo. Pero
para precisar aún más su sentido y evitar confusiones en su inteli-
gencia, debemos consignar que no todos los bienes y derechos po-
seídos por el causante al tiempo de su muerte deben considerarse
como constitutivos de la herencia, pues algunos de ellos, por ser
personalísimo su disfrute, desaparecen con la muerte.

"En ese caso se encuentra el usufructo, el uso y la habitación,
la renta vitalicia que estuviera disfrutando el finado, la patria po-
testad, los alimentos, la tutela, las servidumbres personales, y en
general, todos los derechos personalísimos, pues todos ellos se extin-
guen por el hecho del fallecimiento, y no se transmiten a los here-
deros o sucesores, aún cuando en vida del causante formaran parte
de su patrimonio."

¿Puede equipararse el derecho a reclamar daños y perjui-
cios por lesiones sufridas por una persona a virtud de la culpa
o negligencia de otra ya ejercitado en la corte y trabada la
contienda, aunque no resuelto finalmente, al usufructo, al
uso, a la habitación, a la renta vitalicia que estuviera dis-
frutando el finado, a la patria potestad, a los alimentos, a
la tutela, o a las servidumbres personales? La pregunta
debe contestarse en la negativa.

No debe perderse de vista que se trata de una acción
ejercitada. La persona que tenía el derecho demostró así
su decidida voluntad de reclamarlo y lo reclamó en efecto
ante los tribunales de justicia. Se le debía algo tan suscep-
tible de cobro como si se tratara del producto de su trabajo
personal o de daños causados a su propiedad.

Siendo ello así ¿puede sostenerse que la acción muera con
el reclamante? Repetimos que no, porque no se trata de
algo que sea personalísimo que necesite de la vida natural de
la persona para continuar ejercitándose.

La obligación de la demandada surgió desde el momento
de la ocurrencia del accidente. Fué exigible desde entonces
y a su debido tiempo fué exigida. Cabe perfectamente dictar
la sentencia reconociéndola a favor de los continuadores de
la personalidad del primitivo reclamante como en el caso de

cualquiera otra reclamación. Si a otra conclusión se llegara, el heredero del demandante, el que recibiría el beneficio que debió recibir el demandante, no serían sus descendientes, ascendientes o parientes colaterales, sino la propia persona que le causó el daño. Entre las contingencias del pleito favorables al demandado estarían las dilaciones porque dentro de ellas más probable sería la desaparición del demandante.

Por virtud de todo lo expuesto opinamos que actuó debidamente la corte de distrito al negarse a sobreseer y archivar el caso, y al permitir la sustitución de la demandante por sus herederos. El auto expedido *debe ser anulado y el pleito devuelto* a la corte de distrito de su origen para que continúe tramitándolo de acuerdo con la ley.