590

INOCENCIA FIGUEROA VDA. DE DELGADO ET AL., demandantes y recurrentes, *v.* BOSTON INSURANCE COMPANY, demandada y recurrida.

*Número:* R-68-234     *Resuelto:* 10 de septiembre de 1973

*Amadeo, Benet & Oliveras,* abogados de los recurrentes; *Castro & Castro,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

■ Este es el epílogo de la decisión emitida en el presente caso e informada a las páginas 714 y sigs. del tomo 99 de las Decisiones de Puerto Rico. Nos toca resolver si un hombre que muere víctima del acto u omisión negligente de otro, transmite a sus herederos la causa de acción que no ejercitó, para recobrar indemnización adecuada al sufrimiento físico y moral que precedió a su deceso. Los demandantes-recurrentes ya obtuvieron compensación por sus propios y personales sufrimientos y dolor moral generados por la muerte de su causante. Su demanda contiene una reclamación adicional fundada en la causa de acción que correspondía a su causante por la tortura moral y física sufrida durante los tres días entre la ocurrencia del accidente y su muerte. No hay contención en cuanto a la dolorosa agonía de la víctima inicial Ramón Delgado: sufrió graves quemaduras en ¾ partes de su cuerpo como resultado de una explosión de gases al operar un taladro eléctrico en los tanques de gasolina de la lancha de su patrono recurrido, se mantuvo en conocimiento, no toleraba la ropa, su condición física general era lastimosa, "sufriendo demasiado"; le encomendaba a su esposa que velara por sus hijos y preguntaba por los demás familiares (T.E. págs. 16 y 17), y en esa terrible prueba sucumbió calcinado al tercer día. En la primera decisión de este pleito que lleva fecha de 11 de marzo de 1971 de determinó que la explosión letal tuvo su causa en la imprevisión y descuido del recurrido dueño de la lancha al no tomar las precauciones usuales para perforar tanques de gasolina y operar un taladro eléctrico en un sitio saturado de gases inflamables.

■ Los Arts. 1802 [1] y sigs. del Código Civil (31 L.P.R.A. secs. 5141 y sigs.) en su dilatado ámbito reparador del daño constituyen la fuente de las acciones torticeras deri-

---

[1] Art. 1802 (31 L.P.R.A. sec. 5141).

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

vadas de muerte ilegal que en nuestro derecho son dos: una, la acción personal de la víctima inicial del accidente por los daños que ella misma sufrió; y otra, la acción que corresponde exclusivamente y por derecho propio a los parientes próximos del occiso por los daños que a ellos causa la muerte del causante. *Cáez* v. *U.S. Casualty Co.*, 80 D.P.R. 754, 762, (1958). Cuando como en este caso ambas causas de acción se ejercitan por los sucesores de la víctima original podríamos diferenciarlas llamando a una la acción heredada o patrimonial y a la otra la acción directa o personal.

La razón principal que se ha venido oponiendo como muro de contención a la franca tendencia contemporánea (2) hacia la transmisibilidad por herencia de esta causa de acción tiene su raíz en una subconciente atadura intelectual al viejo aforismo de que la acción personal muere con la persona (*actio personalis moritur cum persona*), doctrina sin fe de bautismo que escaló subrepticiamente los niveles de expresión del derecho común y que además de anacrónica es incompatible con nuestro sistema de derecho civil en su premisa fundamental de ser el heredero continuación de la personalidad jurídica del finado. Máxima bárbara la llamó el comentarista Pollock; de oscuro origen, descartada hace 200 años según *Harris* v. *Nashville Trust Co.*, 162 S.W. (Tenn.) 584, citado con aprobación en *Porto Rico R. L. & P. Co.* v. *Corte de Distrito*, 38 D.P.R. 340, 349 (1928) (*cf. Pérez* v. *Sucrs. de M. Pérez & Co.*, 41 D.P.R. 852 (1931)). De desacreditada y extraña a nuestra institución sucesoral la tildó este Tribunal en *Sosa* v. *Sucn. Morales*, 58 D.P.R. 360, 363, (1941), y en *Silva* v. *Doe*, 75 D.P.R. 209, 216 (1953).

---

(2) En las jurisdicciones estatales de los Estados Unidos donde rige el derecho común se han aprobado los llamados estatutos de muerte ilegal y de sobrevivencia (*wrongful death and survival statutes*) instrumentando esta causa de acción heredada. Frente a la potencialidad generadora de remedio del Art. 1802 del Código Civil, resultan aditamentos innecesarios los Arts. 60 y 61 del Código de Enjuiciamiento Civil (32 L.P.R.A. secs. 310 y 311), versión transplantada a nuestro ordenamiento civil de estos llamados *death statutes*.

En Puerto Rico si bien se ha dicho que "la causa de acción por muerte no es parte del patrimonio hereditario del causante" el *dictum* es de limitada periferia a los hechos del caso, pues sucediendo una hija natural a la víctima del accidente, el padre de éste queda excluido de su herencia, y la acción ejercitada en el caso en particular fue la directa a que tienen derecho los que sufrieron el perjuicio por la muerte, fueren o no herederos. *Travieso* v. *Del Toro y Travieso*, 74 D.P.R. 1009, 1015 (1953). Más tarde, en *Correa* v. *Autoridad Fuentes Fluviales*, 83 D.P.R. 144, 151–152 (1961), se citó el dictum de *Travieso*, en una glosa escolástica irrelevante también a la cuestión factual allí adjudicada que consistió en reconocer el derecho a compensación de la concubina por muerte de su compañero. En ambas ocasiones rehusó este Tribunal adentrarse en la doctrina de *Porto Rico R. L. & P. Co.* v. *Corte de Distrito*, 38 D.P.R. 340, 347 (1928), en el cual, admitiendo la continuación por sus herederos de un pleito de daños y perjuicios incoado originalmente por la víctima inicial del accidente, se dijo:

"Por el artículo 1803 del Código Civil se establece que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Y por el 1804 que tal obligación es exigible no sólo por los actos u opiniones propios, sino por los de aquellas personas de quienes se debe responder.

De acuerdo con esos preceptos legales Rosa Sánchez demandó a la Porto Rico Railway Light & Power Company. La demandada contestó. El juicio fue señalado y suspendido varias veces. Si los hechos alegados son ciertos, la obligación de indemnizar por parte de la demandada es evidente. La demandada tenía una deuda contraída para con la demandante que ésta le pidió por la vía judicial que le pagara. Si se hubiera dictado sentencia favorable a la demandante y se hubiera ejecutado, la demandante hubiera recibido cierta suma de dinero constitutiva de un bien material que hubiera podido disfrutar plenamente en vida y que en caso de no haberse consumido hubiera pasado a sus herederos.

Sucesión es la trasmisión de los derechos y obligaciones del difunto a sus herederos, según el artículo 644a del Código Civil Revisado. La herencia comprende todos los bienes, derechos y obligaciones que no se extinguen por la muerte, prescribe el artículo 667 del propio Código, y se trasmite según el 665 del mismo desde el momento de la muerte. El fallecido continúa viviendo en la persona de sus herederos en cuanto la ficción es posible, o en la *herencia yacente* cuando los herederos no existen. Como dice la Corte Suprema de los Estados Unidos por medio del Juez Sr. Holmes en el caso de *Blackstone* v. *Miller,* 188 U.S. 189, 204, 'La sucesión universal es la continuación artificial de la persona de un fallecido por un albacea, heredero, u otro semejante, en tanto en cuanto a la sucesión de derechos y obligaciones concierne.'

. . . [a la demandante] se le debía algo tan susceptible de cobro como si se tratara del producto de su trabajo personal o de daños causados a su propiedad.

Siendo ello así ¿puede sostenerse que la acción muera con el reclamante? Repetimos que no, porque no se trata de algo que sea personalísimo que necesite de la vida natural de la persona para continuar ejercitándose.

La obligación de la demandada surgió desde el momento de la ocurrencia del accidente. Fue exigible desde entonces y a su debido tiempo fue exigida. Cabe perfectamente dictar la sentencia reconociéndola a favor de los continuadores de la personalidad del primitivo reclamante como en el caso de cualquiera otra reclamación. Si a otra conclusión se llegara, el heredero del demandante, el que recibiría el beneficio que debió recibir el demandante, no serían sus descendientes, ascendientes o parientes colaterales, sino la propia persona que le causó el daño."

Sin embargo, fue tímido e inconcluso el pronunciamiento de *Puerto Rico R. L. & P. Co.*, citado, pues hizo descansar el derecho o causa de acción en el hecho de haber la finada personalmente iniciado la acción mediante radicación de demanda, y en su angosto criterio enfatiza más el trámite procesal de sustitución de parte que el aspecto de transmisibilidad del derecho reclamado. El derecho de los sucesores no depende de ningún trámite procesal iniciado por su causante; arranca del acto torticero mismo, del valor económico determi-

nable en el patrimonio de la víctima que se trasmite a sus herederos no importa la etapa de su trámite procesal y aún cuando no se hubiera iniciado la reclamación judicial. Lo que se trasmite del causante a su heredero es un derecho, no un expediente.

El Art. 608 del Código Civil patrio (31 L.P.R.A. sec. 2090) declara que la herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte; y el Art. 610 (31 L.P.R.A. sec. 2092) precep-túa que los herederos suceden al difunto por el hecho solo de su muerte en todos sus derechos y obligaciones. No obstante ser estos dos artículos reproducciones literales de los Arts. 659 y 661 del Código Civil Español, dentro de cuyo marco se contiene la cuestión litigiosa del momento, no son de gran ayuda los comentaristas ya que no abordan la cuestión frontal-mente limitándose a coincidir en cuanto a que la regla general favorece la mayor transmisibilidad hereditaria y que las obligaciones tanto en su lado activo como pasivo, son objeto de sucesión hereditaria, excluyendo de ella solamente las que debido a su carácter personalísimo se extinguen por la muerte del acreedor o del deudor. Señalan como derechos personalísi-mos que por disposición del Código Civil se extinguen con la persona los de usufructo, uso, habitación, renta vitalicia, patria potestad, alimentos, tutelas, servidumbres personales, ciertos contratos de obras y servicios, la acción de impugna-ción de la legitimidad del hijo y la concedida al donante por causa de ingratitud y aquellos derechos y obligaciones que por pacto se extinguen al morir el contratante, como se estipula frecuentemente en el contrato de sociedad, mandato, como-dato, etc. Castán, *Derecho Civil*, Tomo 6, Vol. I, pág. 93, ed. 1969; Bonet Ramón, *Código Civil Comentado*, pág. 512, ed. 1964; Manresa, *Comentarios al Código Civil*, Tomo V, pags. 300 y sigs.; Scaevola, *Código Civil*, Tomo 12, págs. 51 y sigs., ed. 1950.

■ La causa de acción civil reparadora del daño inferido al difunto ni está en la lista de derechos personalísimos que mueren con la persona ni queda afectada por las razones de exclusión que Castán sintetiza de este modo:

"La regla general es que los derechos que no pertenecen al patrimonio (como los derechos públicos, los derechos de la personalidad casi siempre, los de estado civil, los de la familia) no pasan, en lo fundamental, al heredero. En cambio, los derechos patrimoniales son fundamentalmente transmisibles por sucesión hereditaria; pero algunos de ellos están excluidos de esta transmisibilidad, ya por razón de la naturaleza del negocio jurídico que les sirve de base o ya a virtud de una disposición legal motivada, ordinariamente, por consideraciones económicas.

La sentencia de 11 de octubre de 1943 establece que aunque el Código no contenga un concepto genérico que sirva de guía en la determinación de los derechos transmisibles e intransmisibles mortis causa, 'cabe llegar a una determinación enunciativa de los derechos exceptuados de la transmisión por causa de muerte, como suele formularla la doctrina científica, comprendiendo como intransmisibles, en principio y con ciertas salvedades, los derechos de carácter público; los personalísimos o de tal suerte ligados a determinada persona por sus cualidades, parentesco, confianza, etc., que tienen su razón de ser preponderante y a veces exclusiva en elementos o circunstancias que sólo se dan en titular—ossibus inhaerent—y, por último, algunos derechos patrimoniales de duración limitada, legal o convencionalmente, a la vida de una persona.' " Castán, *ob. cit.*

En sus sentencias de 20 de diciembre de 1930 y 17 de febrero de 1956 el Tribunal Supremo de España cuya jurisprudencia sobre este asunto es sugerente pero confusa, se acercó a la afirmación de transmisibilidad que ahora adoptamos, al resolver que la muerte instantánea del atropellado impidió que éste poseyera ni por un momento el derecho a ser indemnizado, que se supone trasmitió a sus descendientes. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo V, Vol. 1, págs. 55 y sigs., ed. 1961. Puig Brutau es el único de los comentaristas que toma una posición clara en el debate jurí-

dico al declarar que y citamos: *"El derecho del causante a obtener indemnización de los daños y perjuicios* que se le hayan ocasionado durante su vida se transmite, naturalmente, a sus herederos, pues, en definitiva, es una derecho de crédito perfectamente transmisible al amparo de las reglas generales que regulan la transmisibilidad de los derechos." Obra y volumen citados, pág. 55. (³)

En el análisis del demorado reconocimiento de esta causa de acción civil hereditaria percibimos un rezago de conciencia quijotesca, un escrúpulo residual de una época pasada cuando el estilo regidor de nuestra idiosincracia latina no permitía reconciliar y mucho menos equilibrar el concepto de sufrimiento y angustia con el de compensación pecuniaria; la arraigada noción ética de que ninguna suma de dinero podría recibirse en pago de un agravio sin conllevar un sentido de claudicación mercantilista y cierta desaprobación de la opinión pública. En la civilizada evolución de criterios y valores eventualmente la acción civil reparadora suplanta la acción personal de represalia y las cortes vinieron a ocupar el lugar del campo de justas a caballo y con lanza.

Habiendo tomado carta de naturaleza en nuestro ordenamiento civil el precepto y la práctica de convertir a indemnización pecuniaria adecuada el dolor y sufrimiento humano originado por el acto negligente, se le impartió carácter patrimonial al derecho a reclamarla, y representando ese derecho o causa de acción un bien valorable en dinero con normas de estimación o valoración que han ganado la aproba-

---

(³) Nos complace la posibilidad de que esta opinión contribuya a la clarificación en el acervo jurídico de la Madre Patria de esta cuestión de transmisibilidad de la acción en daños que pudo ejercitar el causante de haber vivido, de cuyo deceso fluyen dos causas de acción separadas pero coexistentes: la propia de los sucesores o familiares dependientes y la heredada del de cujus. Y esto a modo de reciprocidad por la histórica frecuencia con que la brillantez del pensamiento jurídico de España alumbró con notable valor de precedente la jurisprudencia patria.

ción ética(⁴) de la sociedad contemporánea, no hay razón legal ni moral para excluirlo del acervo o caudal relicto transmitido por el causante a sus herederos. La reparación del daño causado al destruir una vida, hasta donde pueda concebirse la indemnización pecuniaria como justo valor de esa pérdida, es una de las sanciones que el cuerpo social impone al ofensor que bien por acto criminoso o por negligencia es responsable de la muerte de uno de sus integrantes. Constituiría un sarcasmo y un quebrantamiento de la justicia premiar al autor del acto culposo con inmunidad parcial, pues no otra cosa lleva consigo negar a los herederos el derecho a exigir la justa indemnización por el dolor y tortura de la víctima.

Una sociedad civilizada no puede tolerar que la muerte de la víctima haga las veces de recibo y carta de pago, por una cantidad que en determinadas ocasiones resultaría considerable, avalado no con la firma, sino con el postrer latido de un corazón torturado. La muerte ilegal y la causada por negligencia adquirirían, sin duda, una condición privilegiada que estremece la consciencia educada en el respeto de los altos valores humanos; bajarían al sepulcro no solo un cuerpo, sino también un derecho y el doblar de las campanas en su triste queja tendría una adicional resonancia de duelo.

■ Se llama patrimonio al conjunto de derechos y obligaciones pertenecientes a una persona, apreciable en dinero (Planiol, *Tratado Elemental de Derecho Civil*, Tomo III, pág. 13); y Rojina Villegas lo define como un conjunto de obligaciones y derechos susceptible de una valoración pecuniaria, en su obra *Compendio de Derecho Civil*, Tomo II, pág. 7, ed. 1966. Asentada en nuestra conciencia legal y ética la noción de que el dolor y el sufrimiento humano tienen un equivalente

---

(⁴) ". . . según indica su concepto, no se compreden en el patrimonio todos los derechos y las obligaciones que puede tener una persona, sino únicamente los que pueden ser valuados en dinero. . . ." *Enciclopedia Universal Espasa-Calpe*, Tomo 42, pág. 855.

estimable en dinero, ocurrido el deceso de la víctima no existe razón atendible para que ese activo quede excluido del patrimonio hereditario, como tampoco se excluyen del caudal relicto el haber sujeto a liquidación del causante en una sociedad o corporación o el balance de un crédito hipotecario constituido a su favor. Así lo demanda el principio universal de igual protección de las leyes, pues si invertida la situación de hechos hubiese sido el difunto el autor del acto negligente y dañoso, sus herederos tendrían su patrimonio afectado por el pasivo que representa su responsabilidad heredada, derivada de la culpa paterna.

El derecho de Ramón Delgado, víctima inicial y causante de los recurrentes, a reclamar por sus graves daños contra la parte recurrida es un bien patrimonial, (5) transmitido por su muerte a sus herederos y reclamable por éstos como parte que es de su herencia legítima por lo que los recurrentes tienen un incuestionable interés jurídico y económico en la acción planteada.

El causante sufrió extensas quemaduras que le mantuvieron en condición crítica, angustiosa y desesperada por tres días sufriendo a plena conciencia el terrible e inexorable descenso hacia la extinción de su vida. Valoramos sus sufrimientos físicos y morales en la cantidad de $15,000.00.

*Se revocará la sentencia revisada y en su lugar se dictará otra condenando a los demandados-recurridos al pago de $15,000.00 a los demandantes herederos de Ramón Delgado, más costas, con sujeción a lo dispuesto en la Ley de Contribución sobre Herencias y Donaciones que es la Núm. 303 de 12 de abril de 1946 (13 L.P.R.A. secs. 881 y sigs.).*

El Juez Presidente, Señor Pérez Pimentel, al igual que los Jueces Asociados, Señores Martínez Muñoz y Martín, no interviene. El Juez Asociado, Señor Dávila, dio su conformidad a esta opinión en voto separado.

---

(5) Alfonso L. García Martínez, *Reconocimiento de la Acción Hereditaria por Muerte Ilegal*, 27 Rev. C. Abo. P.R., 463 y sigs. (1966-67).

608

—O—

Voto separado del Juez Asociado Señor Dávila

San Juan, Puerto Rico, a 10 de septiembre de 1973

Al resolver la primera parte de este litigio se dejó pendiente, por estar igualmente dividido el Tribunal, la cuestión de la transmisibilidad de la acción de la persona, que sufrió el daño. En aquel entonces sostenía un criterio contrario al que se expone en la opinión del Tribunal emitida con fecha de hoy. La consideración ulterior del asunto ha modificado la posición que antes sostuviera. Por eso concurro.