Marta de Lourdes **MARRERO ARTACHE**, et al.,
Plaintiffs,

v.

**AUTORIDAD de ENERGIA ELECTRICA**, et al., Defendants.

Civil No. 94–1176(PG).

United States District Court,
D. Puerto Rico.

May 9, 1996.

José F. Quetglas Jordán, San Juan, P.R., for Plaintiffs.

Pedro Santiago Torres, San Juan, P.R., William Reyes Ellias, José A. Gallart Pérez, Ernesto Hernández Milán, Hato Rey, P.R., for Defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is a motion for partial summary judgment filed by defendant Puerto Rico Electric Power Authority (PREPA)[1] and third-party defendant Corporación de Crédito y Desarrollo Comercial y Agricola de Puerto Rico (CCDCA) (collectively, "the defendants"). For the reasons stated below, the motion is **DENIED.**

This case arises from the death by electrocution of José López Reyes ("López Reyes" or "the deceased") on February 13, 1993. López Reyes' statutorily immune employer, Power Engineering Corp., had been retained to perform maintenance work on an electrical substation located on the grounds of Plaza Warehouse & Realty Corp.[2] Prior to the commencement of work, in accord with a request by Plaza Warehouse and Power Engineering, PREPA employees disconnected the overhead power line that conducted electricity to the substation on Plaza's property. Unfortunately, the substation was not fully deenergized, as an underground, allegedly illegally installed power line also fed electricity to the substation. (CCDCA was joined as a third-party defendant due to its alleged responsibility for installing the clandestine cable.) PREPA, unaware of this additional power source, did not deactivate it.[3] Thus, shortly after López Reyes began work, he was killed by a shock of 13,200 volts of electricity.

The complaint was filed by the following relatives of the deceased: (1) his common-law wife, Marta de Lourdes Marrero Artache ("Marta"); (2) his daughter, Jessica Maria López Marrero ("Jessica"), who had been conceived but not yet born at the time of her father's death; (3) his father, José Hipólito López; and (4) his step-mother, Rossana S. López.[4]

The complaint identifies seven separate "causes of action," three of which are challenged here. The defendants seek summary judgment on the following: (1) Jessica's "inherited" claim for López Reyes physical and mental suffering experienced at the time of

---

1. PREPA is the English language acronym for Autoridad de Energia Electrica.

2. Partial summary judgment was entered dismissing the Plaza Provision Company and Plaza Warehouse & Realty Corp. from the case. Dkts. # 13 & # 14.

3. Whether PREPA was negligent in not assuring that the substation was fully deenergized is an issue in this case.

4. Sometime after the accident, the plaintiffs moved to Florida, thus creating the diversity of state residency that is source of the Court's jurisdiction over this matter. Puerto Rico law, of course, controls the disposition of the claim.

his death; (2) Jessica's claim for lost future income; and (3) Jessica's claim for the loss of the filial relation with her father and the emotional damage she has and will suffer as a consequence.

Summary judgment, of course, is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The defendants' arguments will be addressed in turn.

### 1. Jessica's "Inherited" Claim for her Father's Suffering

■ Puerto Rico law provides for the survivorship of tort actions. *Vda. de Delgado v. Boston Insurance Co.,* 101 D.P.R. 598, 607 (1973). Thus, López Reyes' heirs—in this case, only Jessica—have a cause of action for any pain and suffering López Reyes experienced prior to his death. Because a plaintiff may recover only for *actual* damages, however, it necessarily follows that if López Reyes died instantly, without suffering or experiencing the apprehension of his imminent death, he "did not possess, not even for a second, the right to recover damages...." *Zeno Molina v. Vázquez Rosario,* 106 D.P.R. 324, 327, 6 Official Translation 462, 467 (1977) (internal quotation omitted). In that event, Jessica would have no inherited cause of action because there would be no damages.

With no dispute over the governing law, the parties' briefs are reduced to disputing the morbid question of whether López Reyes died (or was rendered unconscious) instantly, or whether he lingered for some time before his death. The defendants cite the expert testimony of Dr. Maria Conte Miller, the state forensic pathologist who performed the autopsy. She asserted that, "this is sudden death. I don't think ... he could survive any time after he received the current." Dr. Conte's deposition at 31. Other statements made by Dr. Conte to this effect can be found at pages 35, 41 and 54 of her deposition. Defendants also cite the statements of four of López Reyes' co-workers, who stated that López Reyes did not cry, yell, call for help or make any other sounds and that "his head just moved backwards for three to six seconds, at most." Motion for Summary Judgment at 11 (summarizing the four co-workers' testimony).

Plaintiffs, not surprisingly, find ambiguities in Dr. Conte's testimony, and interpret López Reyes' co-workers' statements differently. For example, plaintiffs point to Dr. Conte's statement that "[t]he information [given to her wa]s really very incomplete," implying that her testimony could readily be impeached before a jury. Deposition at 40. She did not know, for example, the voltage of electricity that killed López Reyes. Plaintiffs also note that, at one point during the deposition, Dr. Conte conceded that some seconds may have elapsed prior to López Reyes' death. *Id.* at 31. Plaintiffs also revisit the testimony of the eyewitnesses. José González Jiménez, for example, stated that when López Reyes received the electric shock, "he turned his head in both directions." Deposition at 44. Victor Parrilla Pagán asserted that López Reyes "attempted to throw himself" out of the area. Deposition at 61.

■ The conflicting evidence in the record suggest that plaintiffs have met their burden of demonstrating the existence of a genuine issue of material fact regarding the timing of López Reyes' death. Whether his movements after contacting the line were involuntary twitches or the death throes of a man in agony is a question of fact that must be resolved by a jury.

### 2. Jessica's Wrongful Death Claims

■ In addition to the cause of action Jessica inherited from her father, she also seeks damages on her own behalf resulting from her father's alleged wrongful death for (1) lost financial support, and (2) emotional distress. Defendants attack the legal sufficiency of her claims. As it is not supported by affidavits or any other evidentiary arguments, defendant's motion is akin to a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court shall, therefore, assess the motion under that standard, which re-

quires determining whether the plaintiff can prove no set of facts in support of her claim which would entitle her to recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Premised on tort, the propriety of suits for emotional and financial damages resulting from the wrongful death of a loved-one, relation, dependent, or other person having a significant connection with the deceased are well established under Puerto Rico law. *Hernández v. Fournier,* 80 P.R.R. 94, 97 (1957); *Sucn. Pacheco v. Eastern Medical Assoc., Inc.,* 94 JTS 49 at 11772–74.

Defendants appear to make two basic challenges to Jessica's wrongful death claims.[5] They argue (1) that her claims for financial damages are overly speculative, and (2) that as a posthumous child, Jessica was neither a dependant, nor had sufficiently developed emotional bonds with her father the severing of which may be judicially redressed. Because the legal issues are somewhat distinct, the Court must address Jessica's financial and emotional claims separately.

### a. Financial Damage

■ It is the Court's view that Jessica's claim for lost support may not be defeated simply because she had not yet been born at the time of her father's death. As the Puerto Rico Supreme Court has stated, "[t]hose whose needs were supplied by the deceased suffer damages of a patrimonial nature, *as well as those who actually and effectively did not receive support from him but were entitled to receive it, and consequently, lose the well-founded and reasonable expectancy of such future benefits.*" *Hernández,* 80 P.R.R. at 97–98 (emphasis supplied).

Jessica's claim meets these criteria. As López Reyes' uncontested daughter and his

only heir, she not only could reasonably expect future benefits from her father had he lived, she was entitled to them. Puerto Rico law imposes duties upon parents to maintain, house, clothe, educate and otherwise provide for their children. 31 L.P.R.A. §§ 561, 562, 601. Other legal arguments can be made in support of Jessica's claim.[6] In the end, however, resolution of the question depends as much on moral considerations as legal analysis. Holding that a posthumous child is not a dependent of her father would simply be untenable.

Regarding defendants' contention that the claim is overly speculative, the Court disagrees. The case of *Ruiz Santiago v. Commonwealth of Puerto Rico,* 116 D.P.R. 306 (1985), is instructive. In *Ruiz Santiago,* the Puerto Rico Supreme Court rejected the Commonwealth government's contention that damages awarded to a minor child to compensate him for future lost earnings was overly speculative. The Court observed that "we must distinguish between the mere possibility and the probability of a future earning, bearing in mind that in some cases the mere possibility may be compensated." *Id.* at 308, 16 Official Translation 376, 379 (quotation omitted). The Court recognized that to hold a plaintiff to an exacting level of proof of damages where none was unavailable would simply be inequitable. 116 D.P.R. at 312.

If a damages award was not overly speculative in *Ruiz Santiago,* one would certainly not be overly speculative here. The minor in *Ruiz Santiago* had never worked. The trial court estimated his future earnings based on analyses of his early school achievement and other factors. The Supreme Court found the approach reasonable. Significantly more solid evidence is presumably available in this case. The Court assumes that a reasonable

---

**5.** The adverb "appear" is necessary because defendants actually interweave at least four separate arguments, only two of which merit serious consideration. The two frivolous ones shall be addressed in this footnote. First, defendants devote some energy to attacking the theory, which they invented themselves, that Jessica's claim is tantamount to a claim for loss of future inheritance. At other points, defendants seem to argue that Jessica is seeking damages for the diminishment to her *own* future income as a result of her

father's death. Because plaintiff makes no such claims—nor are the ones she does make functionally equivalent to such claims—arguments in relation to these doctrines will not be discussed further.

**6.** For example, Puerto Rico's workers' compensation law specifically provides for the compensation of posthumous children. 11 L.P.R.A. § 3(5)(2).

estimate for López Reyes expected life-time earnings can be calculated based on his prior work history. Based on that, an amount that would have been allocated for Jessica's support can also be estimated. That the parties can be expected to dispute these amounts does not mean that a jury could not arrive at a reasonable figure.

Therefore, the Court finds that Jessica has an actionable claim for lost financial support resulting from her father's alleged wrongful death.

### b. Emotional Distress

The arguments over whether Jessica may claim damages for emotional harm revolve around three arguably inconsistent decisions of the Puerto Rico Supreme Court. Defendants cite two cases: *Correa v. P.R. Water Resources Auth.*, 83 P.R.R. 139 (1961) and *Sanabria v. Commonwealth*, 93 JTS 24. For her part, Jessica cites *Rodríguez v. P.R. Aqueduct and Sewer Auth.*, 98 P.R.R. 852 (1970). It appears that Jessica has the stronger position.

*Rodríguez* involved a claim by the survivors of a pregnant mother of three who fell into a sewer opening that had been negligently left uncovered. She died as a result. The child she was pregnant with at the time, however, was saved. The trial court granted compensation to each of the deceased's older minor children, but denied compensation to the child born shortly before her mother's death.

The trial court's decision was based on the controlling Supreme Court precedent at the time, *Correa v. Water Resources Authority*. In *Correa*, a case involving byzantine family relationships, Carmen and Feliciano, a common-law married couple, took Carmen's grand-daughter into their home to raise as their own child. (The child's father was unknown, and Feliciano was, apparently, not the child's natural grandfather.) Feliciano died approximately fifteen months later in a compensable, work-related accident. The Supreme Court held that the child was not entitled to damages for mental distress re-

sulting from Feliciano's wrongful death. The Court explained its reasoning as follows:

> The damages, even the moral ones, must be actually sustained and suffered by the claimant. At her tender age this child had been depending upon the deceased for a brief period and thereafter she was left under the guardianship of her grandmother who has been materially compensated. And she was too small to be admitted as having sustained mental anguish and sufferings.

*Correa*, 83 P.R.R. at 155.

When *Rodríguez* was heard on appeal, the Supreme Court reversed the trial court's decision. In so holding, the Court distinguished without over-ruling *Correa*:

> There is a difference between the situation of the minor in the case of *Correa*, and the situation of the minor in this case. Therein, that minor was not deprived at her tender age of the attention and daily care of her grandmother nor of her mother. The minor herein, as well as her three brother and sisters, was deprived of the company, the love, the care, and attention of her mother. She was in need of such daily care, love and attention of her mother to the same extent as her other older brother and sisters, and maybe to a greater extent, if we consider all the sufferings of the fetus [before it was removed from her mother's womb].

*Rodríguez*, 98 P.R.R. at 854.

■ Despite the attempt in *Rodríguez* to distinguish, and thus preserve, *Correa*, this Court finds the two decisions difficult to reconcile. True, the child in *Rodríguez* may have suffered some physical harm before her birth, but the disputed claim was for emotional, not physical distress. Thus, the distinction could hardly be determinative, as defendants suggest, especially in light of the Supreme Court's prior holding that a minor's emotional distress is only compensable for the period after the child reaches an age at which cognizance of emotional distress is truly possible. *Correa*, *supra*.[7]

Plaintiffs suggest that the distinction lies in the nature of the relationships involved.

---

7. The rule was reaffirmed in *Riley v. Rodríguez*, 119 D.P.R. 762, 804 (1987). Thus, any damage award Jessica receives for emotional suffering may only compensate her for the period after which she becomes old enough to appreciate her loss.

The deceased in *Correa* was the claimant's step-grandfather, while the deceased in *Rodríguez* was the claimant's mother. But this, too, seems a thin reed, especially in light of recent decisions which provide a cause of action for emotional distress in wrongful death cases to plaintiffs who are not even relations of the deceased. *See, e.g., Sucn. Pacheco v. Eastern Medical Assoc., Inc.,* 94 JTS 49 at 11772–74 (suit brought by the divorced ex-spouse).

In any event, whatever the status of *Correa* today, plaintiffs are correct that the instant case more resembles *Rodríguez* than *Correa.* Jessica has lost a biological parent who she will never know. A jury could reasonably find that she has and will suffer emotional distress as a result.

The case of *Sanabria v. Commonwealth,* 93 JTS 24, is not inapposite. In *Sanabria,* the divorced parents of a 25 year old prison inmate, who had been in prison since he was 17, sought compensation for mental distress suffered as a result of their son's wrongful death. In reducing the damage award entered by the trial court, the Supreme Court observed that "[a]mong the pertinent factors for consideration were the stability of the family nucleus ... and the nature and strength of the family ties." *Id.* at 10411 (court's translation).

*Sanabria* demonstrates that the strength of the existing relationship is an important factor in evaluating the emotional harm resulting from a loved-one's wrongful death. But defendants read too much into the case when they cite it for the proposition that the absence of such preexisting emotional ties at death precludes an award for emotional distress. *Rodríguez* does not permit such a reading of *Sanabria.* Therefore, Jessica has an actionable claim for emotional distress.

### Conclusion

For the reasons above stated, defendants' motion for partial summary judgment (Dkt. # 36) is **DENIED.**

**IT IS SO ORDERED.**