Jose D. **RIVERA CONCEPCION** and **Darmaris Adorno Davila, on behalf of the minor Valerie Rivera Adorno** Plaintiff

v.

**PEPSI COLA OF PUERTO RICO,** et als. **Defendants**

No. CIV. 99–859(GG).

United States District Court, D. Puerto Rico.

Oct. 10, 2003.

Jose F. Quetglas, San Juan, PR, for Plaintiff.

Harold D. Vicente–Gonzalez, Vicente & Cuebas, Francisco E. Colon–Ramirez, Colon, Colon & Martinez, Jose G. Barea–Fernandez, Correa, Collazo, Herrero, Jimenez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

A horrible automobile accident occurred several years ago and we must now determine whether a claimant, who had not

been born nor even conceived at the time of the negligent act, is entitled to recover damages under Article 1802 of the Puerto Rico Civil Code. In so deciding, we must determine whether *vel non* under Puerto Rico law there is a duty not to harm the unborn not yet conceived. After a thorough analysis of this situation in light of the applicable law and jurisprudence of the Commonwealth of Puerto Rico and the Spanish commentators, we conclude that a duty not to harm the unborn not yet conceived does not exist under Puerto Rico law. Therefore, this case must be dismissed because the plaintiff failed to state a valid cause of action under Puerto Rico law.

## BACKGROUND

This is a tort action brought to the court under the diversity of citizenship jurisdiction statute. The plaintiff, Valerie Rivera Adorno, is the sister of Kelvin, David and Stephanie Rivera Adorno, who died in a notorious car accident.[1] We briefly state the relevant facts of the case. At approximately 6:30 p.m. on September 18, 1992, now deceased Julio E. Ruiz Cintrón was driving a Toyota Tercel westerly along Highway 165, a two-lane road in the vicinity of Toa Baja, Puerto Rico. Among the other six passengers in said vehicle were Kelvin, David and Stephanie Rivera Adorno. According to the complaint, Ruiz, in an attempt to pass a slow-moving vehicle in front of him, took the left and opposite lane. At that moment he collided with a Pepsi–Cola tractor-trailer driven by Juan Hernández Rosario. Allegedly, Hernández Rosario was driving at an exaggerated speed. As a result of the collision, the Toyota driven by Ruiz was destroyed and pushed off the road for approximately one hundred and twenty five (125) feet. As a direct result of this collision, all the passengers, except for one, died.

At the time of the vehicle collision here in question, the plaintiff had not even been conceived. In fact, she was born on September 2, 1998, that is, six (6) years after the collision. She is being represented in this case by her parents, José D. Rivera and Darmaris Adorno, who had previously filed an action against the defendants for the pain and suffering caused by the loss of their three previous children and who already received $1,800,000.00 each in compensation, as established by a jury. See, Docket entry # 665 in Civil Case No. 93–2331(RLA).

Valerie claims that she has and will continue to suffer emotional pain and suffering as a result of her parents' loss of the ability to love, caused by the deaths of their previous three children in the automobile collision above mentioned. She also seeks redress for the loss of the love, affection, companionship, moral support, pleasures and enjoyment she would have received from her deceased siblings.

The defendants filed a motion to dismiss arguing that the plaintiff fails to allege actual damages because they are anticipatory, highly speculative and not sufficiently concrete to be submitted to and considered by a jury. In addition, the defendants assert that the elements of causation and foreseeability are lacking. As to the first cause of action specifically, the defendants contend that the real cause of the alleged damage was not the defendants' negligent act but the decision made by the plaintiff's parents, six years after the accident, to have another child they are avowedly incapable of loving and caring for. Most important, the defendants contend that

---

1. For a more detailed recount of the events that lead to the fatal collision and the aftermath, see *Ruiz Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 950 F.Supp. 1217 (D.P.R. 1996).

recognizing Valerie's action as a valid claim under Puerto Rico law would open the courthouse doors to lawsuits not now recognized by creating an entirely new and ever-expanding category of plaintiffs who could sue for torts that occurred years before. More so, the defendants claim that under such a scenario a tortfeasor's exposure and liability could go on for generations. For example, a case settled and thought final, could be renewed every time a child was born who was related to a tort victim. The plaintiff contends that she has complied with all the elements necessary to establish a tort action under Puerto Rico civil law. She also asserts that state and federal case law have recognized that an infant who was unborn at the time when a negligent act was committed is entitled to compensation for any injuries he/she can foreseeably sustain as a result thereof after being born and during his/her lifetime.

## WHO IS A PERSON UNDER ARTICLE 1802 ENTITLED TO RECOVER DAMAGES?

Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, states in its pertinent part that:

> A **person** who by an act or omission causes damage **to another** through fault or negligence shall be obliged to repair the damage so done. (Our emphasis).

Clearly, Article 1802 imposes a duty not to harm another person. See, *Valle Izquierdo v. E.L.A.*, — D.P.R. —, 2002 WL 1067234 (2002), 2002 J.T.S. 70, p. 1135.

In the juridical sense, "person" means every being or entity capable of rights and obligations. See, *Rivera Maldonado v. E.L.A.*, 1987 WL 448304, 119 D.P.R. 74, 80–81 (1987). It also means the active or passive subject of a juridical relation. See, Puig Brutau, José, *Fundamentos de Derecho Civil*, 2nd ed., Barcelona, Bosch, 1979, t. I, vol. I, pp. 3 & 259. As defined by Article 24 of the Puerto Rico Civil Code, 31 L.P.R.A. § 81, birth -living completely separated from the mother's wombis what determines the civil personality and legal capacity of a human being. In other terms, only persons are entitled to the rights, privileges and protections afforded by the law. *Id.* at pp. 38 & 260. See also, *Ruiz Romero v. Gonzalez Caraballo*, 681 F.Supp. 123 (D.P.R.1988)(holding that an unborn infant is not a person, and therefore is not entitled to constitutional rights). By the same token, the law only imposes liability and obligations upon persons.

A logic exception to this obvious rule is that contemplated throughout the Puerto Rico Civil Code wherein special protection is provided to the *nasciturus*, also known as the conceived not yet born child ("concebido no nacido"). Rooted in Roman Law and in consideration to the human potential of the *nasciturus*, Puerto Rico's law recognizes rights and affords protection to those interests that could benefit the *nasciturus* if it eventually becomes a person.[2] See, Puig Brutau, *supra*, at p. 37. For instance, Article 569 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2004, provides that donations may be made to persons, conceived but yet unborn.[3] Articles 914 through 922 establish certain precautions that must be taken to protect the *nascitu-*

---

2. We take note that Article 29 of the Spanish Civil Code, the equivalent to Puerto Rico's Article 24, expressly includes the *nasciturus* in the definition of person when it states that the conceived is deemed born for all those matters that are beneficial to he/she. See, Puig Brutau, *supra* at p. 23.

3. "Gifts made to persons, conceived but yet unborn, may be accepted by the persons who would legally represent them if they should already be born."

*rus* as a possible heir if it finally becomes a posthumous child.[4] See, 31 L.P.R.A. §§ 2711–2719. Likewise, remedial statutes like the Puerto Rico Workmen Compensation Law, Act 45 of April 18, 1935, as amended, 11 L.P.R.A. § 3(5)(2) (2002 Supp.), also provide protection to the *nasciturus* or posthumous child. These legal dispositions are conceived to create an interim juridical relation, between the *nasciturus* and a person or group of persons, aimed at preserving the rights of this potential human life in the event it is born and becomes a legal person capable of becoming the subject of a definite juridical relation.

A juridical relation means a situation created by a given act which connects the right of a person with the right of another. Said connection is made possible by the imposition of obligations upon the person or persons in order to protect an interest deemed sufficiently important by the law. See, Puig Brutau, *supra* at pp. 3 & 259. Article 1802 establishes the negligent/intentional act or omission as the juridical fact that ignites the juridical relation between a tortfeasor and the victim who receives the effects of said act/omission. See, Manresa, *Comentarios al Código Civil Español*, 5th ed., Madrid, Instituto Editorial Reus, 1951, t. XII, p. 641. If at that crucial point in time the claimant did not exist as a legal person or *nasciturus*, that is, if it lacked civil personality, and was thus incapable of becoming the subject of a juridical relation, he/she cannot assert a valid cause of action under Article 1802.

Contrary to the plaintiff's assertion, there is no judicial precedent giving support to her novel claim that an infant, who was neither a person nor a *nasciturus* at the time of the negligent act can assert a cause of action under Article 1802. The plaintiff's reliance on *Rodriguez v. P.R. Aqueduct and Sewer Authority*, 98 P.R.R. 852 (1970), and *Marrero v. Autoridad de Energia Electrica*, 924 F.Supp. 346 (D.P.R.1996), is misplaced. Though the courts in these cases allowed a newborn child to recover for the emotional damages suffered when their mother and father, respectively, died as a consequence of the negligent acts of the defendants, the facts are distinguishable from the present case.

In *Rodriguez* the court dealt with the situation where a pregnant woman fell into an open aqueduct suffering severe physical damages, which led to her death three (3) days later. The doctors performed a cesarean section thus allowing the fetus to survive and become a legal person. Though the negligent act that caused the death of the mother occurred before the infant-claimant had been born, that is, before she became a person, the Supreme Court found that the baby was entitled to receive compensation for the loss of the company, the love, care, and attention of her mother, particularly so considering all the sufferings of the fetus and the fact that she was delivered prematurely from her mother's womb under such critical conditions. Evidently, the infant-claimant was a *nasciturus* at the time of the negligent act that caused the death of her mother and a person when the mother died. In *Marrero*, the infant-claimant was conceived but not yet born at the time of her

---

4. When the widow believes that she has been left pregnant, she must notify those having in the inheritance rights of such a character that they will disappear or be reduced by the birth of a posthumous child. (Article 914). The widow must be given support from the estate, taking into consideration the portion thereof which may pertain to the posthumous child, should it be born and be viable. (Article 919). The division of the inheritance shall be suspended until the parturition or miscarriage takes place, or the lapse of time show the widow was not pregnant. (Article 921).

father's death by electrocution. There the court found that she had lost a father that she would never know for which a jury could find that she had suffered and would suffer emotional distress as a result. Clearly, here the infant-claimant was a *nasciturus* both at the time of the negligent act and when her father died.

Since the infant-claimants in these cases were either a person or a *nasciturus* at the time of the negligent act, they possessed the civil personality necessary to become the subject of a juridical relation with the tortfeasor. *Ergo,* in accordance with the protectionist concept that permeates the Puerto Rico Civil Code toward the eventual rights of the *nasciturus,* the infant-claimants in *Rodriguez* and *Marrero,* were able to validly assert a cause of action under Article 1802. It was in consideration to this same principle that the Puerto Rico Supreme Court held in *Carrasquillo v. American Missionary Association,* 1943 WL 6770, 61 D.P.R. 867, 884 (1943), that a father cannot waive the right to a cause of action that an unborn child may have for damages caused to him at the time of his birth without the previous authorization of the court.

▇ In contrast, in the instant case, Valerie was born six (6) years after: (1) the automobile collision; (2) the death of her siblings; and (3) her parent's loss of the ability to love. Therefore, she could not be the subject of a juridical relation under Article 1802, either definite or interim pending her birth, because she was neither a person nor a *nasciturus* at the time of the negligent act.[5] Hence, the

cases of *Rodriguez* and *Marrero* are inapposite.[6]

In sum, since Article 1802 is part of an integrated code that establishes rights and obligations of persons and of those having the potential of becoming persons *(nasciturus )*, it cannot be interpreted as offering protection to someone who cannot be the recipient of rights. Therefore, we conclude that Article 1802 imposes a duty not to harm another person or a *nasciturus* but it does not extend to a claimant, who at the time of the negligent act was neither a person nor a *nasciturus.* To hold otherwise and accept the plaintiff's claim as a valid cause of action under Puerto Rico law would amount to the creation of a pernicious precedent without any foundation and support in the law. Moreover, it would be contradictory to the basic tenets of civil law, specifically, the rule of foreseeability, as a key element of liability. See, *Rivera Perez v. Cruz Corchado,* 1987 WL 448313, 119 D.P.R. 8, 18–19 (1987); *Pacheco v. A.F.F.,* 1982 WL 210650, 112 D.P.R. 296 (1982); *Pabon Escabi v. Axtmayer,* 1964 WL 14367, 90 D.P.R. 20 (1964); *Weber v. Mejias,* 1962 WL 14866, 85 D.P.R. 76 (1962). See also, J. Santos Briz, *Comentarios al Código Civil y Compilaciones Forales,* Madrid, Ed. Revista Derecho Privado, 1984, Tomo XXIV, pp. 113–14 (citing Opinion of May 13, 1983); Bonet Ramón, *Compendio de Derecho Civil,* T. I, p. 473; Karl Larenz, *Derecho de Obligaciones,* spaniard translataion, T. I, Madrid, 1958, pp. 198 & 200. In addition, it would destroy the purposes behind the statute of limitations doctrine.

---

5. We take note that not even at the time when the damages from which she derives her own damages ensued, did Valerie possessed the civil personality necessary to be the subject of a juridical relation.

6. We also take note that in those cases, the relative that the infant-claimants lost and who

they never knew was a progenitor. Inevitably, all human beings have both a biological mother and father. Therefore, it is comprehensible that an infant will suffer moral damages for the loss of a parent, even if he/she has never nor will ever meet him/her. However, not all humans have siblings.

## FORESEEABILITY

■ "The concept of foreseeability constitutes an essential criterion both for the element of a 'negligent' act as for the element of causal relation—or legal cause or proximate cause—of the tort action." Herminio M. Brau del Toro, *1 Daños y Perjuicios Extracontractuales*, p. 184 (1986). Under Article 1802 a person is not held liable for all the possible consequences of his negligent acts. See, *Rivera v. Pueblo*, 76 P.R.R. 378, 383 (1954) (quoting *Figueroa v. PR Ry., Light & P. Co.*, 66 D.P.R. 463, 470 (1954)). The negligent actor can only be responsible for those consequences that appear to be a natural and probable cause of his acts or omissions, that is, those that are foreseeable in a general sense. See, *Tormos Arroyo v. DIP*, 1996 WL 498870, 140 D.P.R. 265, 276 (1996) (citing *Gines Melendez v. Autoridad*, 1962 WL 14710, 86 D.P.R. 518, 523–25 (1962)); *Miranda v. E.L.A.*, 1994 WL 908883, 137 D.P.R. 700, 707 (1994). See also, Santos Briz, Jaime, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Revista Derecho Privado, 1984, Tomo XXIV, p. 267. "The norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities." Herminio M. Brau del Toro, *1 Daños y Perjuicios Extracontractuales*, p. 185 (1986). The duty of care is then defined as an obligation to anticipate and take measures against a danger that is reasonably foreseeable. See, *Rivera Perez v. Cruz*, 1987 WL 448313, 119 D.P.R. 8, 19 (1987). See also, *Woods–Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 951 F.Supp. 1028 (D.P.R.1996) *aff'd* 124 F.3d 47 (1st Cir.1997)(quoting *Pacheco v. AFF, supra* at 300).

■ It is foreseeable that those who have a close relationship with another usually suffer for the loss of said loved one because they are deprived of their love, care, attention and company. In fact under Puerto Rico case law those related to a deceased victim by blood ties or by love and affection are deemed to suffer moral damages. Accordingly, they may file an independent cause of action against the person causing the unlawful death of a loved one. See, *Hernandez v. Fournier*, 1957 WL 13027, 80 D.P.R. 93, 98 (1957); *Figueroa v. Boston Ins. Co.*, 1973 WL 35626, 101 D.P.R. 598 (1973); *Pacheco Otero v. Eastern Medical Ass., Inc.*, 1994 WL 909291, 135 D.P.R. 701, 706–07 (1994); *Maldonado v. Banco Central Corp.*, 138 D.P.R. 268, 274–75 (1995). See also, *Rojas–Hernandez v. PREPA*, 925 F.2d 492, 493 n. 1 (1st Cir.1991). Traditionally, the courts have awarded moral damages to the parents, spouses, common-law spouses, ex-spouses, sons and daughters, and siblings of the deceased victim.[7] See, *Sanabria v. E.L.A.*, 132 D.P.R. 769, 772 (1993)(awarding moral damages to parents and brother of the victim); *Miranda v. E.L.A., supra* (widow and sons); *Heirs of Pacheco, supra* at 706 (ex-wife); *Correa v. P.R. Water Resources Authority*, 83 P.R.R. 139 (1961) (holding that a concubine may file a tort action for the wrongful death of her companion provided she establishes a real prejudice derived from that death); *Caez v. U.S. Casualty Co.*, 80 P.R.R. 729 (1958)(each child may claim compensation for the damages personally suffered by

---

7. Yet, in cases where the plaintiff fell in one of the categories herein mentioned, the courts have still closely scrutinized the stability of the family nucleus and taken into consideration how strong the family ties were between the plaintiff and the victim. See, *Sanabria, supra* at 774 (reducing the amount of moral damages awarded to the parents and brother of the deceased); *Ruiz–Rodriguez, supra* at 17 (affirming jury verdict denying moral damages to son who had rarely seen father in recent years).

them as the result of the wrongful death of their father); *Castro v. Gonzalez*, 1941 WL 8421, 58 D.P.R. 368 (P.R. March 28, 1941); *Sanchez v. Sucn. Serralles*, 53 D.P.R. 80, 1938 WL 7107 (P.R. April 20, 1995); *Hance v. Mendez & Hnos.*, 1937 WL 5872, 52 D.P.R. 336 (P.R. Nov. 24, 1937) (awarding moral damages to parents for the loss of their minor children).

In view of the above, it was reasonably foreseeable in this case that, at the time of the automobile collision, the close relatives of the deceased victims would suffer emotional distress due to their deaths. Nonetheless, to stretch this to include a claimant who at that time had no relationship or could not be deemed to have any relationship to the deceased would be an atrocious error totally at odds with the prevalent jurisprudence on this matter. Moreover, to impose a rule of liability where the tortfeasor would be held liable for the damages that any future relative of the deceased might suffer would be imposing liability for causes that are only possible at the time but not probable. See, *Figueroa v. P.R. Ry. Light & P. Co.*, *supra*, ("One is not responsible for consequences which are merely possible, but only for those which are probable according to ordinary and usual experience. . . . Probable consequences are to be anticipated and not those which are merely possible. . ."). Though it is possible that in the future other individuals may somehow become related to the deceased victim and then allege that they were deprived of the company and love of the deceased,

such an occurrence cannot be catalogued as a probable one. This is even more so in the case of an eventual claimant who did not exist nor had the potential to exist as a human being at the time of the negligent act. This is so because the mere existence of the individual depends, among others, on the procreation process and, obviously, the eventual birth. In the absence of the conception, these two events are even more uncertain.

In this case, this situation is more patent since at the time of the collision the existence of Valerie was neither probable nor possible. First of all, she had not even been conceived. Secondly, many years before her mother had undergone a sterilization surgery to avoid having more children.[8] Therefore, it was not foreseeable that she would suffer emotional distress due to the loss of her siblings nor due to her parent's loss of the capacity to love because her existence as a human being was not likely at the time. It would be illogic and unreasonable to impose a duty to foresee the infliction of damages upon someone who at the time of the negligent act: (1) is not a close relative, though may in the future become one; (2) does not have a close relation with the deceased, though in the future could develop one; or (3) does not exist nor has the probability of existing as a human being.

## STATUTE OF LIMITATIONS DOCTRINE

It is well established that one of the principal purposes behind the imposition of a limited, yet reasonable, term within

---

**8.** It stems from the record that after their third child, Valerie's parents, namely her mother, underwent surgery to be sterilized and have no more children. See, Transcripts of Trial, pp. 84–85, Civil Case # 93–2331(RLA). Hence, in regards to the first cause of action, the real or proximate cause of her emotional suffering was her parent's decision to engender her knowing they were

unable to provide her the love, care and happiness she deserves and needs, all in total disregard to the obligations under Article 153 of the Civil Code, 31 L.P.R.A. § 601, to form and sustain Valerie's human life. See, *Soto Cabral v. E.L.A.*, 138 D.P.R. 298, 323 (1995) (citing *Llopart v. Mesorana*, 49 D.P.R. 250, 254 (1935)).

which to assert certain rights is to give stability to the juridical relations between persons. See, *Santiago Rivera v. Rios Alonso,* — D.P.R. —, 2002 WL 226623 (2002), 2002 J.T.S. 21; *Zambrana Maldonado v. E.L.A.,* 1992 WL 755000, 129 D.P.R. 740, 750–51 (1992); *De Jesus v. Chardon,* 1985 WL 301252, 116 D.P.R. 238, 243 (1985). See also, H.M. Brau del Toro, *supra,* Vol. II, Cap. X; M Albaladejo, *Derecho Civil,* 10th Ed., Barcelona, Bosch, 1989, T. I, Vol. 2, Sec. 107, pp. 493–574; F. Bonet Ramón, *Código Civil Comentado,* Madrid, Ed. Aguilar, 1962, p. 1541; L. Diez Picaso, *La Prescripción en el Código Civil,* Barcelona, Ed. Bosch, 1964, p. 27; F.F. Sánchez Román, Estudios de Derecho Civil, 2da ed., Madrid, Sucs. Rivadeneyra, 1891, T. 3, pp. 262 *et seq.;* F. Puig Peña, *Compendio de Derecho Civil Español,* 3rd rev. ed., Madrid, Eds. Pirámide, 1976, T. I, p. 681 *et seq.;* D. Espín Cánovas, *Manual de Derecho Civil Español,* 6th rev. ed., Madrid, Ed. Rev. Der. Privado, 1977, Vol. 1, pp. 483–84; J. Puig Brutau, *supra,* T. III, Vol. 1, pp. 360 *et seq.;* J. Manresa, *Comentarios al Código Civil Español,* 6th rev. ed., Madrid, Ed. Reus, 1973, T. XII, pp. 1013–1019, 1235–1236; J. Castán, *Derecho civil español, común y foral,* 13th ed., Madrid, Ed. Reus, 1982, T. 1, Vol. 2, p. 962; Op. of March 12, 1958, no. 22, LXV Rev. Gen. Leg. y Jur. 219; Op. of April 21, 1958, no. 119, LXV Rev. Gen. Leg. y Jur. 1303; Op. of January 25, 1962, no. 562, Aranzadi, XXIX Repertorio de Jurisprudencia 348; Op. of December 21, 1974, no. 4936, Aranzadi, XLI Repertorio de Jurisprudencia 3765; Op. of July 9, 1975, no. 2947, Aranzadi, XLII Repertorio de Jurisprudencia 2226; Op. of June 16, 1976, no. 2815, Aranzadi, XLII Repertorio de Jurisprudencia 2226; Op. of June 16, 1976, no.

2815, Aranzadi, XLII Repertorio de Jurisprudencia 2084.

In the case of Article 1802 the applicable term is one year from the time that the victim learned of the existence of the damage and who caused it. See, Article 1868 of the Civil Code, 31 L.P.R.A. § 5298; *Municipio de San Juan v. Bosque Real S.E.,* 2003 WL 945783, — D.P.R. —— (2003), 2003 J.T.S. 33, p. 636; *Santiago Rivera v. Rios Alonso, supra* at 714–15 (and cases therein cited); *Colon Prieto v. Geigel,* 1984 WL 270950, 115 D.P.R. 232, 243 (1984). The establishment of such a term avoids the indefinite protection of rights not claimed and the surprises generated by the resuscitation of stale claims, namely, the loss of evidence, the difficulty in obtaining witnesses and the loss of memory. Last, but not least, the ultimate reason behind the imposition of a limitations period is that it protects the defendant from being exposed *ad infinitum* to claims. See, *Rivera Castillo v. Municipio of San Juan,* 1992 WL 755604, 130 D.P.R. 683, 694–95 (1992); *Zambrana Maldonado v. E.L.A., supra,* at 750 (citing L. Díez–Picaso, *La Prescripción en el Código Civil,* Barcelona, Ed. Bosch, 1964, Cap. IV(2), p. 40); *Culebra Enterprises Corp. v. E.L.A.,* 127 D.P.R. 943, 950 (1991). See also, *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 42 (1st Cir.1990).

The recognition of Valerie's claim would be at odds with the purposes behind the statute of limitations doctrine because the defendants would be exposed *ad infinitum* to claims for damages related in some fashion to the negligent act in question. Every time a relative of the original victim was born, he/she would be entitled to file an Article 1802 action.[9] To allow such a

---

9. To better illustrate this situation, let us take these examples. A man, who at the age of ten (10) became an orphan due to the negligent act of a tortfeasor and as a consequence lose the ability to love. After a judicial action, he received compensation for said damage.

cause of action would permit unscrupulous individuals to engage in the act of procreating new claimants that would keep the defendants exposed indefinitely. This situation evokes cowboy Richard Boone, in his famous characterization of "Paladin" wearing his well-known black garb, saying "Have Gun Will Travel". Certainly, to sanction such a cause of action and conduct would be to destroy the purposes behind the statute of limitations doctrine. This will not be permitted.

## FINAL REMARKS

We do not underestimate the terrible tragedy that Valerie's parents have endured after the loss of their three (3) previous children. Nonetheless, we believe that they should view Valerie's birth as a wonderful opportunity that life has provided them to pour all the love they had for their previous children into this little angel that has been sent from up above to bring back joy and happiness into their lives. Every child is a blessing and Valerie is no exception. After such a terrible ordeal her parents should appreciate Valerie's life even more and view her birth as a second opportunity that life has given them to love and cherish their offspring. The court finds hard to grasp how this terrible loss may have impaired them from loving their only daughter instead of enjoying every single moment they share with her.

In conclusion, we find that Valerie is not entitled to recover any damages in this case because at the time of the collision, the death of her siblings and her parent's loss of the capacity to love she was not a person nor had any potential of becoming

one, *ergo*, was incapable of being the subject of a juridical relation and to be entitled to rights and to the protection of the law.

**WHEREFORE**, for the reasons herein stated, the defendants' motion to dismiss is **GRANTED** and this case is hereby **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**SO ORDERED.**

However, twenty (20) years later, the man had a daughter who claims is suffering emotional distress because her father is unable to love her. Or lets say, a man who died at the age of nineteen (19) and left behind a one (1) year old son. Twenty-two (22) years later, the son had a son of his own who now claims was deprived of the love and company of his grandfather. Clearly, under such scenarios, the tortfeasor would be exposed for generations.