**Julio E. Ruiz TROCHE et al., Plaintiffs,**

v.

**PEPSI COLA OF PUERTO RICO BOTTLING COMPANY et al., Defendants.**

**Jose D. Rivera CONCEPCION et al., Plaintiffs,**

v.

**PEPSI COLA OF PUERTO RICO BOTTLING COMPANY et al., Defendants.**

**Manuela Vazquez ORTIZ et al., Plaintiffs,**

v.

**PEPSI COLA OF PUERTO RICO BOTTLING COMPANY et al., Defendants.**

**Civil Nos. 93–2329 (RLA), 93–2331 (RLA) and 93–2332 (RLA).**

United States District Court, D. Puerto Rico.

Dec. 19, 1996.

Jorge Carazo Quetglas, Toledo Toledo & Carazo–Quetglas, Hato Rey, PR, José F. Quetglas Alvarez, José F. Quetglas Jordán, San Juan, PR, for Plaintiffs.

E. Vázquez Otero, Vazquez & Suarez, Río Piedras, PR, for Puerto Rico Insurance Guaranty Assoc., In the interest of Juan Hernandez Nazario, Corporacion Insúlar De Seguros, Pepsi Cola Bottling Company and Cooperativa Los Vaqueros.

Carlos J. Morales Bauzá, Rossello–Rentas & Rabell–Mendez, San Juan, PR, for Puerto Rico Insurance Guaranty Assoc., In the interest of Bansander Leasing.

José G. Barea, Gonzalez Oliver, Correa Calzada, Collazo Salazar, Herrero & Jimenez, San Juan, PR, for Banco Santander Puerto Rico.

Francisco J. Colón–Pagán, San Juan, PR, for Pepsi Cola of Puerto Rico Bottling Co. Cigna Insurance Company of Puerto Rico Vehicle Equipment Leasing Inc.

José A. Miranda Daleccio, José O'Neill Font, Miranda–Cardenas & Cordova, San Juan, PR, for Cooperativa Los Vaqueros (Excess of Policy Limits).

## ORDER IN THE MATTER OF COUNTERCLAIMS FILED IN CIV. NOS. 93–3331 AND 93–2332

ACOSTA, District Judge.

Before the Court are two motions filed in Civil Nos. 93–2331 and 93–2332 requesting the dismissal of counterclaims filed by defendants based on the alleged negligence of various plaintiffs.

### I. FACTUAL BACKGROUND

The claims asserted in these consolidated proceedings stem from a collision involving a car and a truck which resulted in the death of the driver of the car as well as five (5) of its passengers.

According to the record, on September 18, 1992 YOLANDA RIVERA went to the house of her mother, MANUELA VAZQUEZ ORTIZ, to pick up her minor children SHAKIRA and ELVIN as well as the three (3) minor children of DARMARIS ADORNO DAVILA, who were also being cared for by MANUELA VAZQUEZ. At approximately 4:30 p.m. YOLANDA and her husband JULIO ELVIN RUIZ CINTRON together with the five (5) minor children boarded a 1991 Toyota Tercel. At approximately 6:30 p.m. the Toyota driven by JULIO ELVIN RUIZ CINTRON collided with a truck pulling an empty Pepsi Cola trailer van driven by JUAN HERNANDEZ NAZARIO. All persons in the Toyota died except for SHAKIRA, who sustained serious injuries.

At the time of the accident DARMARIS ADORNO DAVILA and her husband JOSE DAVID RIVERA resided in Massachusetts.

### II. PROCEDURAL BACKGROUND

The number of plaintiffs, their relationship as well as the interrelation of the entities having an interest in the truck and trailer/container have made these cases complex and procedurally difficult.

Civ. No. 93–2331 was filed by JOSE DAVID RIVERA and his wife, DARMARIS ADORNO DAVILA, claiming their own pain and suffering as well as that of their three (3) children killed in the accident.

Civ. No. 93–2332 was filed by MANUELA VAZQUEZ ORTIZ seeking relief for the deaths of her daughter, son-in-law and grandson as well as for the pain and suffering associated with the injuries sustained by her granddaughter SHAKIRA as a result of the accident. SHAKIRA sued for her own injuries and also for the loss of both parents and brother. She also asserted the claims of her deceased mother and brother.

Named defendants in these actions are the driver and all entities having an interest in the truck and/or container and their respective insurers, i.e., Pepsi Cola of Puerto Rico Bottling Company (PEPSI), CIGNA Insurance Company of Puerto Rico (CIGNA), Vehicle Equipment Leasing, Inc. (VELCO), Cooperativa Los Vaqueros (COOP), Puerto Rico Insurance Guaranty Association (PRIGA) and Bansander Leasing (BANSANDER).

The counterclaims at issue can be summarized as follows:

CIVIL NO. 93–2332

Amended Counterclaim (docket No. 73) 1

| Defendants (counter claimants) | Plaintiffs (counterclaim defendants) |
| --- | --- |
| PEPSI | Manuela Vázquez Ortiz |
| CIGNA | Shakira Ruiz Rivera |
| VELCO | Samuel Morales Vázquez |
| | Deborah Sambrana Vázquez |

CIVIL NO. 93–2333

Amended Counterclaim (docket No. 74) 2

| Defendants (counter claimants) | Plaintiffs (counterclaim defendants) |
| --- | --- |
| PEPSI | José David Rivera Concepción |
| CIGNA | Darmaris Adorno Dávila |
| VELCO | |

Counterclaim (docket No. 79)

| Defendants (counter claimants) | Plaintiffs (counterclaim defendants) |
| --- | --- |
| COOP LOS VAQUEROS | José David Rivera Concepción |
| | Darmaris Adorno Dávila |

---

1. All references to docket entries pertain to Civ. No. 93–2329 as the lead consolidated case.

2. Although this pleading is entitled "amended" it is the only counterclaim filed by these defendants.

## III. *NEGLIGENCE*

In order to adequately address the propriety of the counterclaims asserted in these actions, it is imperative to first review the procedural mechanisms available to defendants in reducing their exposure vis à vis plaintiffs in this action. In that manner, the relevancy and impact of the negligence of one or more plaintiffs can be reviewed in the proper perspective. Thus, a distinction must be made between (1) the personal/direct negligence of a plaintiff; (2) the negligence of a plaintiff/driver which is imputed to other plaintiffs who knew or should have known about the driver's ineptitude; and (3) the negligence of a plaintiff which is imputed to other plaintiffs who institute "derivative" claims. Each one of these situations has distinct implications in terms of reducing a defendant's exposure/liability.

### A. *Direct Negligence*

■ A defendant may raise the issue of the contributory negligence of a plaintiff either as an affirmative defense or by way of a counterclaim. Should a determination be made that plaintiff's negligence was a proximate cause of the damages sought, plaintiff's award will be reduced by his particular percentage of negligence. Additionally, a defendant may deduct from the award of a negligent plaintiff the amounts paid to other plaintiffs in excess of defendant's specific percentage of responsibility. *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60 (1985).

■ In the event that the joint tortfeasor is not a party to the proceedings, a defendant may implead him by way of a third-party complaint to seek a determination of specific percentages of negligence among the tortfeasors and secure a judgment for contribution, or bring a separate suit for "nivelación" to collect a proportionate share of the impleaded party's degree of negligence.

### B. *Imputed Negligence—Driver*

■ Additionally, the percentage of negligence charged to a person driving under the influence of alcohol has been imputed to a passenger, provided the following factors are met: (1) the driver was drunk or driving under the influence of alcohol to such extent that he was rendered careless or incompetent; (2) the passenger knew or should have known of the driver's condition; and (3) the driver's condition was a contributing factor to the accident. *Vélez–Rodríguez v. Amaro–Cora*, 95 JTS 38 at 758 (1995). In these instances, a passenger will be assessed the same share of negligence as the driver and his claims reduced accordingly.

■ Although *Vélez–Rodríguez* concerns drunken drivers, we find its premise applicable to passengers riding in cars driven by persons whose performance may be impaired by the use of drugs. Further, in addition to the passengers, adults responsible for placing minors in a vehicle under the control of an impaired driver should also be held accountable under the same doctrine provided that the three-pronged criteria established in *Vélez–Rodríguez* is met.

However, because the general rule is that the negligence of a driver **cannot** be imputed to others, it is only by way of exception, that is, when the driver's condition **was known or should have been known** to others, that his/her negligence will be attributed to them. *See Vélez–Rodríguez*, 95 JTS at 758. Thus, in order for defendants to extend the driver's negligence to either YOLANDA RIVERA or MANUELA VAZQUEZ, it is their burden to establish that these counterclaimed plaintiffs knew or should have known that JULIO ELVIN RUIZ CINTRON "was ... driving under the influence of [cocaine] to such extreme that rendered him careless or incompetent" and that this condition was a proximate cause of the accident.

### C. *Imputed Negligence— Derivative Claims*

■ Additionally, the negligence of a person injured or killed in an accident is attributable to claims filed by (1) his/her heirs who assert the deceased's personal cause of action and (2) individual suits for damages which derive as a result of the negligent victim's injuries or death. *Miranda v. E.L.A.*, 94 JTS 152 (1994).

Consequently, the claims a decedent was not able to assert due to his/her demise and which pass on as part of his/her estate in accordance with *Publio–Díaz v. E.L.A.*, 106

D.P.R. 854 (1977) and *Vda. de Delgado v. Boston Ins. Co.*, 101 D.P.R. 598 (1973) will be subject to a reduction proportionate to the decedent's own negligence.

■ In addition, the negligence of a victim/decedent will also impact on the individual actions filed by others whose claims arise by reason of the victim/decedent's injuries/death.

Thus, whether inherited or individual, these two types of actions are deemed to derive from the deceased/victim and consequently, will be subject to any negligence attributed to the deceased/victim. In other words, the awards of plaintiffs falling into either of the aforementioned categories will be reduced proportionately to the percentage of negligence of the deceased/victim.

## IV. *THE CLAIMS*

We will proceed to examine the nature of the allegations asserted by counter claimants to ascertain whether they are premised on a plaintiff's (1) direct negligence; (2) imputed

3. Only the Amended Counter Claim filed by PEPSI, CIGNA and VELCO (docket No. 73) contains allegations against MANUELA ORTIZ VAZQUEZ. In pertinent part, these read as follows:

21. Coplaintiff Manuela Vázquez Ortiz is directly responsible to the appearing codefendants **as legal guardian of Shakira Ruiz Rivera.** Furthermore, she is responsible for negligently leaving with **Julio Elvin Ruiz Cintrón and Yolanda Rivera the care of the three minors** ... **when she knew and/or should have known that Julio Elvin Ruiz Cintrón was a drug addict and unfit to take care of the children and/or have them under his custody and care.** She failed in her duties of care to the children and was negligent in her "in vigilando" and "in eligendo" responsibilities. She also breached her duty of care endorsed to her by the minors [sic] parents.... (emphasis ours).

4. In pertinent part, the allegations against them in the Amended Counter Claim filed by PEPSI, CIGNA and VELCO (docket No. 74) read as follows:

2. ... **José David Rivera Concepción** and **Darmaris Adorno Dávila** failed in their duties "in vigilando" and "in eligendo" ... in that they negligently selected Manuela Vázquez Ortiz to take care of them when they knew and/or should have known that she was inadequate to handle the responsibilities and/or knew and/or should have known that she was delegating her duties to a person who was incapable of res-

negligence—driver; and/or (3) imputed negligence—derivative claims.

### A. *Manuela Ortiz Vázquez*

The thrust of the allegations asserted against MANUELA ORTIZ VAZQUEZ by way of counterclaim [3] is that she failed in her duties *in vigilando* and *in eligendo* by allowing the three (3) minors entrusted to her care to ride with JULIO ELVIN RUIZ CINTRON when she knew or should have known that JULIO ELVIN RUIZ CINTRON was an addict or that on that particular day was under the influence of cocaine, thereby impairing his ability to drive safely and rendering him unfit to take care of the children.

### B. *Jose David Rivera Concepción and Darmaris Adorno Dávila*

As to JOSE DAVID RIVERA CONCEPCION and DARMARIS ADORNO DAVILA, the parents of three of the small children riding in the back seat of the Toyota, the allegations in the two counterclaims filed against them [4] are that they failed in their

ponsibly caring for said children. They knew and should have known that she was delegating her duties to take care of the children to **Julio Elvin Ruiz Cintrón** who at the time was a **drug addict and/or under the influence of drugs** and could cause, as in fact he did cause, an accident which cost the children their lives. **José David Rivera Concepción and Darmaris Adorno Dávila,** in the alternative, were unaware of the whereabouts their children at the time of the accident.... (emphasis ours).

COOP filed a Counterclaim against JOSE DAVID RIVERA CONCEPCION and DARMARIS ADORNO DAVILA (docket No. 79) alleging as follows:

3. Plaintiffs **José David Rivera Concepción** and **Darmaris Adorno Dávila** failed on their duties of care "in vigilando and in eligendo" to their own children when negligently selected and hired **Manuela Vázquez Ortiz** to take care of the children although they knew or should have known that **Manuela Vázquez Ortiz** was unfit and/or incompetent to handle the responsibilities.

4. **José David Rivera Concepción** and **Darmaris Adorno Dávila** failed on their duties of care when they knew or should have known that **Manuela Vázquez Ortiz** was delegating her duties to a person who was much less incompetent [sic] to take care and custody of the children.

5. Coplaintiff **Rivera Concepción** and **Adorno Dávila** knew or should have known that

duties *in vigilando* and *in eligendo* in that they knew or should have known that MANUELA VAZQUEZ was not capable of taking proper care of their children and that she exposed them to danger by delegating her responsibility to JULIO ELVIN RUIZ CINTRON, a known cocaine user. Further, that JOSE DAVID RIVERA CONCEPCION and DARMARIS ADORNO DAVILA knew or should have known that JULIO ELVIN RUIZ CINTRON was unfit to drive or care for their children due to his drug use.

## C. *Shakira Ruiz*

Counterclaimants further argue that SHAKIRA RUIZ is charged with the negligence of her parents in her capacity as heir to their respective estates. This includes her father's reckless driving as well as the negligence imputed to her mother for allegedly allowing her husband to drive even though she knew or should have known that he was under the influence of drugs at the time. Defendants argue that SHAKIRA should be held responsible for any payments defendants may have to make to other plaintiffs by reason of her father's negligence.

Thus, the claims against SHAKIRA are two-fold. First, defendants attempt to hold her responsible for her father's direct negligence as a representative of his estate. This would entail payment by his estate of awards paid in excess of defendants' proportionate negligence. Additionally, defendants argue that YOLANDA RIVERA was negligent which, in turn, would reduce Shakira's inherited claims from her mother.

### 1. The Father's Estate

■ According to defendants, MANUELA, as tutor, tacitly accepted the inheritance of SHAKIRA's father by taking possession of his property, i.e., the house where the family was living prior to the accident.[5] However, according to the evidence in the record SHAKIRA's parents lived in a structure built on top of MANUELA's house which was constructed with MANUELA's money and pursuant to her consent. Under these circumstances, it is inappropriate to conclude that the residence was decedent's property.

■ Furthermore, even assuming *arguendo* that MANUELA tacitly accepted the father's inheritance by retaining control of SHAKIRA's former residence, because SHAKIRA is a minor, the Civil Code specifically provides that the tacit acceptance of the inheritance by her guardian is per force deemed subject to inventory. P.R. Laws Ann. tit. 31 § 2775 (1993); I Efrain González Tejera, Derecho Sucesorio Puertorriqueño 165 (1983); IV–III José Ramón Vélez Torres, Curso de Derecho Civil—Derecho de Sucesiones 448 (1992). This view is further bolstered by the fact that judicial authorization is required before guardians can either (1) accept an inheritance on behalf of minors **without** the benefit of an inventory or (2) reject an inheritance. P.R. Laws Ann. tit. 31 § 786(10) (1993).

The practical effect of the inventory type of inheritance is that SHAKIRA will not be personally liable for her father's obligations nor will their respective assets be intermingled. P.R. Laws Ann. tit. 31 § 2814 (1993); Efrain González Tejera at 157. On the other hand, if an inheritance is accepted pure and simple, the properties of the deceased and the heir become fused and the heir becomes responsible for satisfying the estate's obligations with his/her own property, if needed. However, if acceptance is conditioned on an inventory, the property of the deceased and the heir remain separate. Accordingly, decedent's debtors may only collect from the estate and the heir will not be responsible for any of the estate's obligations. Vélez Torres at 449, 454.

Thus, assuming that MANUELA VAZQUEZ tacitly accepted the father's inheritance on behalf of SHAKIRA, such acceptance is subject to an inventory for which reason SHAKIRA cannot be liable for any monies owed by her father. Her father's

---

Manuela Vázquez Ortiz was delegating her duties to take care and custody of the children to Julio Elvin Ruiz Cintrón who at all relevant time [sic] was a **drug addict and under the influence of drugs [which] generated a risk** **against the health, safety and life** of the three children.
(emphasis ours).

5. No claims were asserted by SHAKIRA in the complaint as heir to her father.

debts would have to be satisfied exclusively with any assets in his name.

## 2. The Mother's Estate

The complaint filed by SHAKIRA also includes claims inherited from her mother, killed in the collision, which may denote a tacit acceptance of her mother's inheritance.

■ Tacit acceptance of an inheritance includes those actions which necessarily presuppose the will to accept the inheritance or actions which would not have taken place except by virtue of being an heir, as opposed to mere conservation or provisional administration of the estate. González Tejera at 149; Vélez Torres at 449.

■ We find that in asserting her mother's own claims SHAKIRA tacitly accepted the latter's inheritance, since such action constitutes an affirmative disposition of ownership. However, as previously indicated, the Puerto Rico Civil Code establishes that acceptance on behalf of a minor is necessarily subject to inventory. Accordingly, any exposure SHAKIRA could be subject to in these proceedings as her mother's representative, would be limited to her mother's assets, if any.

## V. ARGUMENT

### A. Direct Negligence

The only direct negligence defendants have put at issue in these proceedings is that of the driver, JULIO ELVIN RUIZ CINTRON. However, he is not a party to the case and any judgment rendered against him could not be executed against his daughter's assets for the reasons previously stated.

As to the allegations asserted by defendants against MANUELA VAZQUEZ ORTIZ, DARMARIS ADORNO DAVILA and her husband JOSE DAVID RIVERA we fail to discern any direct negligence claims nor have defendants set forth any evidence to support their allegations that these plaintiffs' actions and/or omissions contributed to or were the proximate cause of the damages sought herein.

### B. Imputed Negligence—Driver

The thrust of the allegations in the counterclaims derive essentially from JULIO ELVIN RUIZ CINTRON's alleged impairment, caused by his alleged use of cocaine. On the one hand, defendants argue that MANUELA VAZQUEZ ORTIZ, DARMARIS ADORNO DAVILA, JOSE DAVID RIVERA CONCEPCION and YOLANDA RIVERA knew or "should have known" about JULIO ELVIN'S use of narcotics. Additionally, defendants contend that MANUELA VAZQUEZ and/or YOLANDA RIVERA should have recognized the driver's alleged impairment on the day of the accident.

■ There is absolutely no evidence in the record nor have defendants pointed to any which suggest that JULIO ELVIN RUIZ CINTRON had a drug addiction problem or that he was a known user. The only evidence proffered by defendants to justify this conclusion is the deposition testimony of JOSE DAVID RIVERA CONCEPCION where he conceded that he himself had used cocaine. It is difficult for the court to surmise the logic behind defendants' argument that because JOSE DAVID RIVERA CONCEPCION had used cocaine, this would have somehow apprised not only him but also his wife, as well as MANUELA and YOLANDA, that JULIO ELVIN was a cocaine user.

Defendants contend that the drug intoxication should have been noticed by his wife, his mother-in-law and by DARMARIS ADORNO "who had experience dealing with cocaine users." Opposition to "Motion Dismissal and/or Summary Judgment and Memorandum in Support Thereof" (docket No. 145) at 4–5. As grounds for this assertion, defendants make reference to the deposition of JOSE DAVID RIVERA CONCEPCION, according to which it was clear that DARMARIS "knew that her husband used cocaine and that conduct bothers [sic] her." Id. n. 2 at 5. This argument is totally speculative.

Defendants consistently suggest that the driver was a cocaine user whose "erratic behavior" on the day of the accident should have alerted others to his incompetence to drive a car. They argue that failure to notice what was "evident" was negligent because

the driver had "significant amounts of cocaine" in his system. PRIGA,[6] in the interest of JUAN HERNANDEZ NAZARIO and CORPORACION INSULAR DE SEGUROS emphatically makes this conclusory allegation:

> 1D. There is enough evidence in the record to prove that Yolanda Rivera and her mother, coplaintiff Manuela Vazquez, knew or should have know that Julio Elvin Ruiz was intoxicated or under the influence of drugs to such an extent as to make him impared [sic] to drive a car and careless or incompetent driver.

Opposition to "Motion Dismissal and/or Summary Judgment and Memorandum in Support Thereof" (docket No. 145) at 2.

However, the only evidence pointed to in support of all allegations pertaining to this putative awareness is the toxicology report which yielded positive for cocaine in decedent's blood system at 0.45 mcg/ml. From this laboratory result defendants deduct, without any evidentiary foundation whatsoever, that JULIO ELVIN RUIZ CINTRON was a habitual drug user and that his condition on the day of the accident was such that everyone around him should have noticed. The record is devoid of a scintilla of evidence to support these conclusions. No information has been proffered by defendants to explain how the particular amount of cocaine found may have affected his aspect and/or behavior which would have somehow alerted these plaintiffs to his allegedly impaired condition.

To the contrary, the testimony offered by DR. FRANCISCO CORTES, the forensic pathologist who performed the autopsy, clearly stated that unlike instances of the consumption of alcohol, measuring to a scientific degree the extent of an impairment caused by the consumption of cocaine is not feasible. Deposition of DR. CORTES at 101.

LUZ ELENA DROZ, the forensic chemist who conducted the analysis of the samples taken during the autopsy, stated that the only conclusion that could be reached from the laboratory results was that cocaine was present in decedent's system at the time of the accident. However, she explained that no determination could be made as to how long prior to his death the cocaine had been ingested, since this substance can remain in the system up to 72 hours. The length of time required for the human body to process and eliminate cocaine will vary depending on the particular metabolism of the user. Deposition of DR. DROZ at 54.

Rather than submitting evidence to back their allegations, defendants rely on the outcome of future discovery results and eventual expert reports.

> [T]his court will have before it sufficient evidence to conclude that the plaintiffs *should have known* of the erratic behavior attributed to the deceased Julio Elvin Ruiz Cintrón. Among other things, the autopsy report performed upon Ruiz Cintrón revealed significant amounts of cocaine in different stages of metabolization in Ruiz Cintrón's nose, blood, urine and vitreous humor. Although the discovery so far conducted on the few experts presently announced or produced, have yet to reveal the exact amounts and the consequences of such amounts of the cocaine in Ruiz Cintrón's body as further discovery is conducted and experts named, the information will surface.

Reply to Plaintiffs' Motion to Dismiss Counterclaims filed by PEPSI (docket No. 144) at 14 (emphasis ours).

Once plaintiffs have challenged the adequacy of the claims asserted against them the burden shifts to defendants to come forth with the requisite factual underpinnings to justify their allegations. Defendants cannot merely rely on their pleadings. *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992).

We find that defendants failed to meet their burden under the summary judgment standard by not submitting any support for their bare allegations that the counterclaimed plaintiffs "knew or should have known" about the driver's impaired condition, as required by *Vélez–Rodríguez.*

Defendants have had ample time to conduct discovery in these proceedings to as-

---

**6.** It must be noted that no counterclaim has been filed on behalf of these parties.

certain the necessary facts to support their allegations. Further, in the event that additional discovery was needed to confront plaintiffs' arguments, compliance with the strict requirements of Rule 56(f) Fed. R.Civ.P. was mandated which does permit a mere promise to do so. *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670 (1st Cir.1996); *Ayala–Gerena v. Bristol Myers–Squibb,* 95 F.3d 86 (1st Cir.1996); *Fennell v. First Step Designs,* 83 F.3d 526 (1st Cir.1996).

### C. Imputed Negligence— Derivative Claims

■ Lastly, SHAKIRA and MANUELA seek compensation for damages resulting from the death of JULIO ELVIN RUIZ CINTRON as father and son-in-law respectively. *See* Second Amended Complaint filed in Civ. No. 93–2332 (docket No. 69) ¶¶ 67 and 72. These actions are subject to a reduction proportionate to the negligence of JULIO ELVIN RUIZ CINTRON in light of the rationale expressed by the Supreme Court of Puerto Rico in *Miranda v. E.L.A.,* 94 JTS 152 (1994). These are familial claims which arose by reason of an accident which may have been partly or totally due to the negligence of their relative driver.

■ As indicated by the Puerto Rico Supreme Court, relatives of a victim should not be allowed to invoke family solidarity to seek compensation from a tortfeasor and at the same time reject the consequences of the victim's own negligence. *Miranda v. E.L.A.,* 94 JTS at 526. Thus, defendants are entitled to have the individual awards of claims which are deemed to "derive" from the driver to be reduced by any percentage of negligence

---

7. *See* Amended Counter Claim filed by PEPSI, CIGNA and VELCO (docket No. 74) and Counterclaim filed by COOP (docket No. 79).

8. The pertinent paragraphs have been transcribed for easier reference.

    7. The following persons were allegedly riding as passengers in the Toyota ... A total of **seven (7) people** were piled up into the Totoya at all relevant times.
    . . . .
    9. Mrs. Yolanda Rivera Vázquez was also negligent in allowing Mr. Ruiz Cintrón to drive the Toyota, **overflowing** with passengers many of whom were children, while impaired.

which is eventually attributed to JULIO ELVIN RUIZ CINTRON.

## VI. NEW CLAIMS: OVERCROWDED CAR—NO SEAT BELTS

In response to plaintiffs' request for dismissal of the counterclaims PEPSI, CIGNA and VELCO argue alternative theories of relief. Specifically, they contend that JULIO ELVIN RUIZ CINTRON, YOLANDA RIVERA and MANUELA VAZQUEZ were also negligent in having allowed five (5) minors to ride in an overcrowded car without enough seatbelts. *See* Reply to Plaintiffs' Motion to Dismiss Counterclaims (docket No. 144) at 15.

However, as pointed out by plaintiffs, these claims were not asserted by defendants in their pleadings. No reference to overcrowding or lack of seatbelts appears in the counterclaims filed against JOSE DAVID RIVERA CONCEPCION and DARMARIS ADORNO DAVILA.[7] Further, the number of persons riding in the car is mentioned only twice in the Amended Counter Claim filed by PEPSI, CIGNA and VELCO (docket No. 73) and none of them can be regarded as giving notice to plaintiffs of a possible claim based on these grounds. The first reference appears at ¶¶ 7 and 12 but merely as an indication of the total number of persons riding in the car. The other is at ¶ 9 which merely relates the negligence of YOLANDA RIVERA in allowing her husband to drive a vehicle "overflowing" with children while impaired.[8] None of the allegations asserted against MANUELA VAZQUEZ in this pleading make any mention of the lack of

---

    . . . .
    12. The negligence and/or fault of the driver of the Toyota ... consisting of the irresponsible and reckless manner in which he operated the vehicle, and the fact that he did so while impaired, together and concurrently with the negligence of Mrs. Rivera Vázquez who as the only other adult allowed Mr. Ruiz Cintrón to drive the vehicle while impaired, risking the lives of **five children,** were the sole adequate causes of the ... collision. . . .
(emphasis ours).

seatbelts or overcrowding as a basis for her liability.[9]

## VII. CONCLUSION

The issue at this point is NOT whether or not the driver of the Toyota was negligent. The issue is strictly whether or not his negligence **by reason of** the use of cocaine can be imputed to others and whether or not contribution for the driver's negligence can be sought from SHAKIRA.

The Motion for Dismissal and/or Summary Judgment and Memorandum in Support Thereof filed by plaintiffs in Civil No. 93–2331 (docket No. 141) and the Motion for Dismissal and/or Summary Judgment and Memorandum in Support Thereof filed by plaintiffs in Civil Nos. 93–2332 (docket No. 142) are hereby disposed of as follows.[10]

1. The direct negligence of JULIO ELVIN RUIZ CINTRON may not be employed by defendants as means to collect from his daughter monies paid in excess of their percentage of liability since there is no evidence in the record that she has accepted his inheritance.

2. The counter-claims based on the driver's alleged drug use are hereby DISMISSED since defendants failed to present any evidence to indicate that YOLANDA RIVERA, MANUELA VAZQUEZ, DARMARIS ADORNO DAVILA and/or JOSE DAVID RIVERA **knew or should have known** about the driver's impairment.

3. However, the claims of MANUELA VAZQUEZ as well as those filed by SHAKIRA which are deemed to have **"derived"** from the death of the driver, shall be subject to a reduction equal to his percentage of negligence as envisioned in *Miranda v. E.L.A.*

IT IS SO ORDERED.

9. The following is the only paragraph describing her negligence.

> 21. Coplaintiff Manuela Vázquez ... is responsible for negligently leaving with Julio Elvin Ruiz Cintrón and Yolanda Rivera the care of the three minors ... when she knew and/or should have known that Julio Elvin Ruiz Cintrón was a drug addict and unfit to take care of the children and/or have them under his custody and care.

10. *See also* Opposition .. filed by COOP (docket No. 143); Reply ... filed by PEPSI, CIGNA and VELCO (docket No. 144); Opposition ... filed by PRIGA (docket No. 145); Omnibus Reply ... filed by plaintiffs (docket No. 146) and Reply ... filed by PEPSI, CIGNA and VELCO (docket No. 147).